**TEXAS EMPLOYERS' INS. ASS'N**

v.

**HUGHEY.**

No. 15493.

Court of Civil Appeals of Texas.

Fort Worth.

March 12, 1954.

Rehearing Denied April 16, 1954.

Burford, Ryburn, Hincks & Ford, Logan Ford and Joseph M. Stuhl, Dallas, for appellant.

E. W. Napier, Wichita Falls, for appellee.

MASSEY, Chief Justice.

From a judgment in a workmen's compensation case rendered in behalf of the plaintiff and for total and permanent disability benefits, the insurer appealed.

Judgment affirmed.

■ H. O. Hughey sued Texas Employers' Insurance Association, the insurer of his employer under the Workmen's Compensation Act, Vernon's Ann.Civ.St. art. 8306 et seq., alleging that he sustained injuries in the scope and course of his employment on date of March 1, 1952. The claim for compensation benefits on account of the disability growing out of said injuries was filed approximately eight months later. The claim was filed upon the occasion that H. O. Hughey first called upon an attorney in connection with the events attendant to his injury and the subsequent disability. This attorney acted as counsel for Mr. Hughey from that time forward. The Workmen's Compensation Act contains provisions which, as a conditional prerequisite to any right to benefits, make it incumbent upon an injured employee to give his Notice of Injury within 30 days of the happening of the injury, and file his Claim for Compensation benefits before the Industrial Accident Board of Texas within the period of six months next subsequent to the date the injuries were sustained, "Unless the association or subscriber have notice of the injury, * * *." Vernon's Ann.Civ.St. art. 8307, § 4a. The proviso that "for good cause * * * in meritorious cases" may be waived, follows the statutory requirement. By the well settled law of Texas it is incumbent upon an injured employee under the aforesaid provisions (in showing the existence of "good cause" for a delayed filing of a claim for compensation benefits) to show not only that such cause existed, but further, its existence up until the time immediately prior to the time his claim was actually filed.

In the instant case, the issue of "good cause for delayed filing" of Hughey's claim

for compensation was raised, and upon direct examination his attorney asked him the following question: "Well, state whether or not you continued to believe that until about the time you came up to see me?" This question was asked in connection with and following the statement of the witness to the effect that following receipt of his injuries he thought they were temporary and inconsequential, and that he was going to be able to go back to work. The defendant objected to the question on the ground that it was a leading question, but he was overruled and the witness answered to the effect that such state of mind on his part had continued up until the time he had called upon counsel, by his answer, "Yes, sir."

The defendant Insurance Company predicates a point of error upon the allowance of the question and its answer over its objection.

█ If a question seeking to elicit an individual fact is framed so that by its answer through a "yes" or "no" on the part of the witness the witness is empowered to echo back the words of counsel, and thus give the desired answer in the desired form upon a point material to the disposition of the case, it is a leading question. Prior to 1912, its allowance (over an objection) required reversal of a judgment if testimony adduced thereby was upon a material issue in the case. International & G. N. Ry. Co. v. Dalwigh, 1899, 92 Tex. 655, 51 S.W. 500; Bryan Press Co. v. Houston & T. C. Ry. Co., Tex.Civ.App., 1908, 110 S.W. 99; see also the authorities cited in these cases. However, since the adoption of Texas Court Rule 62a in 1912 (see 149 S.W. x, Amendments to Rules), which was substantially our present Rule 434, T.R.C.P., the burden was imposed upon a party complaining of such (the court's commission of error in the conduct of the trial) to show that the prejudice thereby resulting to him was such that the judgment of which he complains was obtained.

In the instant case the plaintiff had by his pleadings predicated his claim of "good cause" for the late filing of his claim upon a contention that up until the time he did file the claim he was of the opinion that his injuries were inconsequential and temporary, but that just prior to the time he did file the claim he realized or discovered that his condition was worsening instead of improving. Hence, the material time was the time of such realization or discovery, coupled with the fact that immediately thereupon the claim was filed. The plaintiff, or at least his counsel, knew that a prima facie case establishing the existence of "good cause" for the delay in filing the claim would be made out if he, the plaintiff, testified that in his opinion his injuries were trivial and temporary up until just prior to the time he filed his claim. During the course of the trial and antecedent to the question complained of it was already established that the claim was filed immediately upon the occasion when he went up to the office of his attorney to see him about the case, so an inquiry as to that occasion was no different than an inquiry as to the time of claim filing. It was likewise established that the plaintiff had not filed a claim because he thought he would be "able to go back to work all right." The desired testimony therefore would be a statement by the plaintiff while he was a witness that "I continued to believe that (that I was going to be 'able to go back to work all right') until just before the time I went up to see my attorney." The question asked, "State whether or not you continued to believe that (that you were going to be 'able to go back to work all right') until about the time you came up to see me?" therefore empowered the plaintiff to testify and make out the entire prima facie case establishing "good cause" for his delayed filing of his claim by a simple "Yes" answer to the question asked. Under the authority of the cases cited, and with due consideration of the applicable provisions of Rule 434, T.R.C.P., the judgment he obtained, *if obtained by reason thereof,* would be required to be reversed, it, in itself, constituting improper evidence reasonably calculated to cause the return of an improper verdict. Luse v. Gibson, Tex.Civ.App. El Paso, 1930, 26 S.W.2d 1081.

What we mean to say is, that if the testimony so obtained was the only testimony which established the existence of "good cause" for the delayed filing of the claim then we would be required to reverse the judgment and remand the case for another trial. However, if the same facts are found to be proven elsewhere in the record, then we must consider such proof in connection with the error we have stated does exist, because it would no longer be conclusive that plaintiff obtained his judgment because of the error, and it must be considered as to whether the application of the provisions of Rule 434, T.R.C.P., to these altered circumstances establish that the error "was reasonably calculated to cause" and "probably did cause" the rendition of an erroneous judgment. In the event we deem that it was so calculated and also probably did so cause, reversal would be required, otherwise not.

Examining the Statement of Facts we find that just prior to the time the quoted question was asked and the objection made, the following testimony was adduced from the plaintiff:

"Q. Well, now, you didn't file a Claim for Compensation until October following your injury in February, did you? A. No, sir.

"Q. Why didn't you file the Claim?

*   *   *   *   *   *

"Q. I don't want you to tell about that now, but I just want to know why you didn't file your Claim before you did file it. A. Well, I thought I was going to get along all right and not have to—and I thought I'd get better—get well. I didn't think about my leg being broke, or tore up, or sprung like it was, or anything.

"Q. And you thought that it was a temporary matter? A. Sure.

"Q. And you would get over it in a little while? A. Yes, sir.

*   *   *   *   *   *

"Q. All right. And did you believe that you were going to be able to go back to work all right? A. Well, I thought I would be; nothing to do down there much, you know, nothing to do."

■ The appellate court is made the body to judge whether the complaining party has been harmed by the error complained of. In making this determination the appellate court will do so from a consideration of the record as a whole. Texas Power & Light Co. v. Hering, 1949, 148 Tex. 350, 224 S.W.2d 191. In view of the record as a whole we cannot form an opinion that the allowance of the improper leading question and its answer probably caused a rendition of an improper judgment. This we conclude because there is an absence of anything shown in supplement demonstrating that such allowance probably resulted to the defendant's prejudice in such degree that it probably did cause the rendition of an improper judgment in the case, even granting that the testimony admitted was reasonably calculated to cause such. Poole v. State Highway Department, Tex. Civ.App. Fort Worth, 1953, 256 S.W.2d 168, dismissed w. o. j. The plaintiff had already testified that he did not file his Claim for Compensation before the time he did file it for the same reason given by his answer to the improperly framed question, and had stated even more, to-wit, that he believed his injuries inconsequential and of temporary duration. The further testimony did not amount to undue emphasis of the former testimony. In the light of the whole record we cannot say that there is more reason to believe, as Rule 434, T.R.C.P., now requires, that the jury's verdict for the plaintiff was caused by the improper question and answer complained of than that it would not have resulted absent its having been asked and answered. Aultman v. Dallas Railway & Terminal Co., Tex.Sup., 1953, 260 S.W.2d 596.

■ In the nature of the same objection as just discussed, the defendant took exception to certain testimony from the wife and daughter of the plaintiff. The wife's testimony was upon the question of

whether—along about the time the plaintiff filed his Claim for Compensation—his physical condition bettered or worsened or seemed to get better or to get worse. The daughter's testimony was upon the same question. The questions asked were subject to the same complaint as to their leading character as was the leading question which had been put to the plaintiff himself and which we have discussed. The defendant's objections were overruled, and, of course, by "echoing back" the words of plaintiff's counsel the desired answer was given in each instance and testimony went into the record upon the same material point already discussed. In our opinion, however, the testimony so received, though corroborative of that already given by the plaintiff himself, did not so bolster the plaintiff's case that the fact already established through the plaintiff's testimony was unduly emphasized to the point that prejudicial error must be presumed. At least it does not appear so from an examination of the face of the record before us, in which there appears nothing in supplement demonstrating that the allowance of such form of questions and answers probably resulted in prejudice to a degree requisite to reversal.

Another point urged upon this appeal as error is the definition in the court's charge of "partial disability". In order to clearly understand the definition, it is necessary to refer to the definition given of "total disability", and couple it with the definition of "partial disability", the two definitions being as follows:

"You are instructed that the term 'total disability' as used in this charge, does not imply an absolute disability or incapacity to perform any kind of labor, but a person disqualified from performing the usual tasks of a workman in such a way as to render him unable to procure and retain employment is ordinarily regarded totally disabled."

"You are instructed that 'partial disability' as that term is used in this charge, is some disability less than 'total disability' as that term is defined herein, which re-duces the Plaintiff's wage earning capacity below his average weekly wage as found by you herein."

The objection taken to the definition of "partial disability" which is material to the appeal reads as follows: "The Defendant objects and excepts to Instruction 'H' of the Court's charge for the reason that the same places too onerous a burden on the Defendant herein than is required by law, in that the jury is told by such instruction that, if the Plaintiff's wages, or wage-earning capacity, is lessened, he is partially disabled which amounts to an instruction to the jury that the amount of the Plaintiff's wages, or wage-earning capacity, is the decisive factor and is what determines partial incapacity, which is erroneous as a matter of law."

■ Of course, a charge to the effect that wages, or the reduction in the amount thereof occasioned by an employee's disability, demonstrates partial disability—is erroneous as not in accord with the provisions of the Workmen's Compensation Act, in sections 6, 10, 11, and 12 of T.R.C.S., Art. 8306. Section 6 provides for instances in which compensation is provided to be paid,—for injuries which incapacitate an employee from earning full wages. Section 10 refers to a period of time during which incapacity resulting from injuries is total—and the "incapacity" is that relating to the performance of work, and Section 11 refers to a period of time during which incapacity is partial only—and the "incapacity" is that relating to the performance of work. In neither section is it stated that the "incapacity" has any relation to or is to be measured by wages. The provision of Section 6 which seemingly conditions a right of an employee to compensation for injuries which have incapacitated him from earning "full wages" has no effect and is inoperative to supply any test of disability or degree thereof. Section 12 likewise has no effect and is inoperative to supply any test of disability, its material provisions being to the effect that the amount of compensation to be paid an injured employee shall be measured or determined according

to the percentage of incapacity. In the cases which have been appealed because of charges erroneously applying tests as to disability under the Workmen's Compensation Act, judgments for injured employees have been reversed where the special issue inquiries about employees' partial disability did not meet the test which would be posed by asking this question: "Is his capacity to perform the ordinary tasks of a workman lessened?" but where a lesser test was applied which either occasioned too great a burden upon the insurer or a lesser burden upon the employee. United States Fidelity & Guaranty Co. v. Baker, Tex.Civ.App. Amarillo, 1933, 65 S.W.2d 344, and foreign authorities cited; Republic Underwriters v. Brown, Tex.Civ.App. San Antonio, 1938, 117 S.W.2d 157, error dismissed, 17 T.L.R. 113.

That "partial incapacity" within the meaning of the Texas Act means "that a person is disqualified from performing the usual tasks of a workman but is capable of performing part of such usual tasks, or labor of a less remunerative class whereby a reduction in earning capacity is suffered" was approved as a definition in the case of Texas Employers Ins. Ass'n v. Hitt, Tex.Civ.App. Galveston, 1939, 125 S.W.2d 323, 330. A similar definition was seemingly approved in Traders & General Ins. Co. v. Wright, Tex.Civ.App., Eastland, 1936, 95 S.W.2d 753, affirmed in 132 Tex. 172, 123 S.W.2d 314.

■ In this instance, inquiry as to whether the plaintiff's capacity in such respect was lessened was made the test of disability, with condition that it must have reduced his wage earning capacity. We believe that in this instance a circumstance that might in some cases operate to mislead a jury in workmen's compensation cases was protected against. We know of instances where an employee for reasons of his own labors for wages which are below his wage earning capacity. The Workmen's Compensation Act nowhere allows for proof of such, and compensation maximums are all controlled by "wages" at time of injury, never "wage earning capacity" at time of injury.

Section 11 of T.R.C.S., Art. 8306, provides that the measure of amount of compensation to be received by an injured employee from the insurer for "partial incapacity" has a relation to two things, to-wit, "average weekly wages before the injury" and "average weekly wage earning capacity" during the period of disability. In other words, the wage immediately prior to the occasion of the injury is to be 100% in any consideration by way of ratio and proportion, and complete absence of wage earning capacity because of disability to perform ordinary tasks of a workman on account of the injury is to be 0%, and if there is some wage earning capacity lying in between 0% and 100% the amount of the compensation for the disability is based on these percentages so long as the lawful compensation "weekly maximum" is not exceeded. Texas Employers' Ins. Ass'n v. Holmes, 1946, 145 Tex. 158, 196 S.W.2d 390. The "incapacity for work" is the contingency upon which the right to compensation depends, and its degree as measured by the difference between the two standards, "wages" before and "wage earning capacity" after injury is the measure whereby the compensation amount is controlled. Whenever there is a wage earning capacity, payment of a wage commensurate thereto is or should be in some amount of value measurable in money, and where such amount, so measured, amounts to less than the employee's wages immediately prior to the time of his injury,—then such amount establishes the percentage of disability applicable under the Workmen's Compensation Act, as well as the fact of disability. By one and the same test is established the fact of "partial incapacity" and the percentage which will be used to compute the amount of compensation payable because thereof. It is true that under this system the fact of "partial disability" is not independently established antecedent to the finding of the degree or percentage thereof, but the objection taken was not because of this fault, if it be a fault. The

burden carried by the injured employee is at least as great by such a system as otherwise would be the case, and correspondingly there is no greater burden cast upon the insurer than would legally be its burden under a different character of submission. The fact that a wage earning capacity is diminished so that such capacity is below the amount of wages formerly earned (not wage earning capacity formerly existent) because of an injury decisively determines the existence of partial incapacity within the meaning of the Workmen's Compensation Act. An instruction to the jury to this effect does not place a greater burden upon a defending insurer than the law requires. The point is overruled.

Judgment is affirmed.