**GAB BUSINESS SERVICES, INC., Appellant,**

v.

**Sherry MOORE, Appellee.**

**No. 6–91–103–CV.**

Court of Appeals of Texas, Texarkana.

April 14, 1992.

W. David Carter, Barry Bryant, Smith, Stroud, McClerkin, Dunn, Nutter, Texarkana, Ark., for appellant.

Jim Ammerman, II, Marshall, for appellee.

Before CORNELIUS, C.J., and BLEIL and GRANT, JJ.

## OPINION

GRANT, Justice.

GAB Business Services appeals from a judgment in favor of Sherry Moore for insurance bad faith and deceptive trade practices.

GAB contends there was insufficient evidence to support the jury's findings that GAB failed to act fairly and in good faith in handling Sherry Moore's workers' compensation claim, that GAB engaged in an unfair or deceptive act or practice, and that Moore suffered out-of-pocket expenses or mental anguish damages. GAB also contends the trial court erred in refusing to submit GAB's requested jury instructions, in denying GAB's motion for instructed verdict based on sovereign immunity and the Texas Tort Claims Act, and in refusing to allow a deposition excerpt into evidence.

GAB is an insurance adjuster specializing in workers' compensation claims. GAB contracted to handle all workers' compensation claims brought against any of the 850 cities that insure themselves through the Texas Municipal League Intergovern-

mental Risk Pool (the "Risk Pool"). Marshall, Texas, is one of those cities.

On January 20, 1987, Sherry Moore, an employee of the City of Marshall, slipped and fell at work while carrying a bulky container of mail. Moore's injuries required medical treatment and physical therapy. GAB authorized payment of the medical expenses for this treatment and therapy.

Moore continued to work full time, taking an hour every few days for physical therapy. Then, on July 26, 1987, while she was at home putting on a pair of pants, Moore experienced severe lower back pain and had to be taken to Marshall Memorial Hospital. The hospital stay lasted two weeks. By October 6, 1987, Moore had missed over 190 hours of work, and the City of Marshall ceased to pay her.

Moore requested weekly workers' compensation benefits. GAB denied weekly benefits on the theory that Moore's lower back injury was not connected to her on-the-job fall but was caused solely by the strain she incurred while putting on her pants at home. Moore's numerous requests for weekly benefits were unavailing.

The Industrial Accident Board awarded Moore $5,484.63 for her on-the-job injury. Moore appealed, and in July of 1988, a bench trial was held. The judge found that Moore's back problem was a result of her on-the-job injury and that Moore was totally and permanently incapacitated.

In November of 1988, Moore filed this suit, alleging that the City of Marshall, the Risk Pool, and GAB failed to act in good faith and violated portions of the Insurance Code and the Deceptive Trade Practices Act in handling her claim. A jury trial was held, and the jury found in favor of Moore. The trial court granted the City's and the Risk Pool's motion for judgment non obstante veredicto, finding no evidence that those defendants violated their duty of good faith, and entered judgment only against GAB for $25,000 in actual damages, $75,000 in exemplary damages, and forty percent attorney's fees. GAB appeals from that judgment.

GAB first contends that there was insufficient evidence to support the jury's finding that GAB failed to act fairly and in good faith in providing Moore weekly workers' compensation benefits. When considering an insufficiency of the evidence point, this Court must consider and weigh all of the evidence and should set aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong. *Cain v. Bain,* 709 S.W.2d 175, 176 (Tex.1986).

Workers' compensation carriers have a duty to deal fairly and in good faith with injured employees. *Aranda v. Insurance Co. of North America,* 748 S.W.2d 210, 212–13 (Tex.1988). A claimant who asserts that a carrier has breached its duty of good faith and fair dealing must establish (1) the absence of a reasonable basis for denying or delaying payment of the claim, and (2) that the carrier knew or should have known that there was no reasonable basis for denying or delaying payment of the claim. *Aranda,* 748 S.W.2d at 213.

Patricia Strobel, the GAB employee who handled the case, testified that the medical reports in GAB's file indicated that Moore's on-the-job accident had injured her shoulder, elbow, and wrist. Strobel and her supervisor, Mike Bratcher, both testified that GAB was willing to pay any expenses related to Moore's shoulder, elbow, and wrist. But they took the position that Moore's back problem was caused by a separate, intervening accident which happened at home and therefore was not compensable.

The initial report of injury filed by the City, however, indicated that Moore suffered injury to her left shoulder, left leg, *and the left side of her back.* Moreover, GAB had medical reports indicating that Moore was having back problems in the Spring of 1987, after her on-the-job injury but before the alleged intervening incident on July 26, 1987. GAB had a hospital report dated March 26, 1987 indicating that Dr. Douglas Duncan had ordered a CT-scan of Moore's lumbar spine. GAB also had a

report from Dr. David Adams dated March 26, 1987, stating, "This 38–year–old lady gives a history of falling at work two months ago injuring her left upper extremity *and low back.* She complains of paresthesia of her left hand with frequent nocturnal hand pain. *She also complains of severe low back pain radiating into the left lower extremity."* (Emphasis added.) GAB had a medical history from Dr. Jorge Martinez indicating that Moore's back had been injured by the January fall.

GAB filed a statement of controversion on October 30, 1987, listing its reasons for denying the claim. According to the statement, GAB's investigation did not indicate that Moore's disability was due to her January injury.

On November 12, Dr. Bob Herrin, who had been treating Moore's back, wrote GAB stating, "It is my opinion that Mrs. Moore's problems with her back originated on January 20, 1987, as a result of her fall." A few days later, GAB was forwarded a report from the physical therapy department of Marshall Memorial Hospital indicating that the therapy Dr. Duncan had prescribed in March included therapy to the left arm, shoulder, neck, and *lower back.* GAB also received an employer's supplemental injury report indicating that, as of October 6, 1987, Moore was off the job as a result of her January injury.

Despite this additional documentation, GAB refused to reconsider its statement of controversion and would not begin weekly benefits. Ken Hargrove, who had worked as a claims adjuster for twenty years, testified that he would have started benefits in this situation and that GAB unreasonably delayed payment.

Two witnesses testified that Sherry Moore's husband, William Moore, told them that Moore's back pain was due to her putting on her pants at home. There was testimony, however, that it is not uncommon for a person to incur an injury and then later, while performing some ordinary task, feel the effects of that injury.

There was sufficient evidence for the jury to find that there was no reasonable basis to deny Moore's claim and that GAB knew or should have known that there was no reasonable basis to deny the claim. The point of error is overruled.

■ GAB next contends there was insufficient evidence to support the jury's finding that GAB engaged in any unfair or deceptive act or practice. An insurer's lack of good faith in processing a claim is an unfair or deceptive act and can be the basis of a cause of action under the Deceptive Trade Practices Act, TEX.BUS. & COM.CODE ANN. § 17.41, et seq. (Vernon 1987 & Supp. 1992). *Vail v. Texas Farm Bureau Mut. Ins. Co.,* 754 S.W.2d 129, 135 (Tex.1988); *Allied General Agency, Inc. v. Moody,* 788 S.W.2d 601, 604 (Tex.App.—Dallas 1990, writ denied).

■ The evidence shows that even after GAB received medical reports indicating that Moore's back injury was caused by her on-the-job fall, GAB refused to reconsider its position, offer a reasonable settlement amount, or begin weekly benefit payments. There was sufficient evidence for the jury to find that GAB engaged in an unfair or deceptive act or practice. The point is overruled.

■ GAB next urges that the trial court erred in refusing to submit GAB's requested jury instructions. When a requested instruction is submitted in writing and the trial judge refuses it, the judge shall write "refused" on it and sign or initial it. Such an endorsed, refused instruction serves as a bill of exceptions. TEX.R.CIV.P. 276. Nowhere in the record is there a sheet so marked and endorsed, nor is there a formal bill of exceptions. We therefore conclude that GAB did not comply with Rule 276 and did not preserve error. *Templeton v. Unigard Sec. Ins. Co.,* 550 S.W.2d 267, 269 (Tex.1976); *Moffett v. Goodyear Tire & Rubber Co.,* 652 S.W.2d 609, 612 (Tex.App.—Austin 1983, writ ref'd n.r.e.); *Breithaupt v. Navarro County,* 675 S.W.2d 335, 339 (Tex.App.—Waco 1984, writ ref'd n.r.e.).

■ GAB next contends that there was insufficient evidence to support the jury's finding that Moore suffered any out-of-

pocket expenses or mental damages. In order to establish mental anguish, a plaintiff must show more than mere worry, anxiety, vexation, embarrassment, or anger. *Town East Ford Sales, Inc. v. Gray*, 730 S.W.2d 796 (Tex.App.—Dallas 1987, no writ). Mental anguish includes a mental sensation of pain resulting from such painful emotions as grief, severe disappointment, wounded pride, shame, despair, and public humiliation. *Trevino v. Southwestern Bell Telephone Co.*, 582 S.W.2d 582, 584 (Tex.Civ.App.—Corpus Christi 1979, no writ).

■ Ireba Hartsell, Moore's Sunday school teacher and personal friend, visited with Moore during the time she was unable to work. Hartsell testified that the Moores had to change residences two or three times during this period; that the Moores had to accept charity from the church food bank on at least two occasions; that Moore told her that Moore had sold personal property and was going to pawn her wedding ring; and that Moore had had to accept a $600 loan from a neighbor.

Hartsell testified that during the time that Sherry Moore was unable to work, William Moore was also disabled by a back injury. Hartsell testified that Sherry Moore was on the verge of a nervous breakdown: very upset, worried, and scared. "She was disturbed to the extent that it was, I believe, having an effect on her health because she couldn't provide for her family." Ken Hargrove testified that Moore came into his office on more than one occasion and cried because of the family's financial difficulties.

■ Evidence of what has taken place in a plaintiff's life as a result of a defendant's actions is important in showing mental anguish. *National Union Fire Ins. v. Dominguez*, 793 S.W.2d 66, 73 (Tex. App.—El Paso 1990, writ denied). Jurors are best suited to determine, by referring to their own experiences, whether and to what extent the defendant's conduct caused compensable mental anguish. *St. Elizabeth Hosp. v. Garrard*, 730 S.W.2d 649, 654 (Tex.1987). There was sufficient evidence to support the jury's award of

$25,000 for mental anguish damages. The point is overruled.

GAB next contends that it should have been granted a directed verdict because it was the agent of a governmental entity and therefore entitled to governmental immunity.

■ First, the evidence does not clearly establish that GAB was an agent of the Texas Municipal League Intergovernmental Risk Pool. Leigh Goodwin, an employee of the Risk Pool, testified that GAB paid all claims of less than a certain amount without notifying the Risk Pool. If GAB estimated that liability on a claim would be more than $15,000, GAB would notify the Risk Pool, which would then determine whether to extend a settlement offer to the injured worker. Goodwin testified, however, that, based on the information she was provided, the instant claim was not beyond GAB's $15,000 authority. The evidence shows that GAB was an independent contractor acting on its own authority.

■ Second, GAB does not come within the protective ambit of the official immunity doctrine. Under that doctrine, a state employee who gathers facts and acts on them is clothed with quasi-judicial status and enjoys immunity from personal liability as long as he or she acts in good faith within the scope of his or her authority. *Austin v. Hale*, 711 S.W.2d 64, 66 (Tex. App.—Waco 1986, no writ); *Augustine By Augustine v. Nusom*, 671 S.W.2d 112, 115 (Tex.App.—Houston [14th Dist.] 1984, writ ref'd n.r.e.). GAB was not a state employee but a private company that contracted to provide specific services to the Risk Pool. More importantly, the jury found that GAB did not act in good faith.

■ In some cases, even a state employee with quasi-judicial status is not entitled to official immunity. *Armendarez v. Tarrant County Hospital Dist.*, 781 S.W.2d 301, 306 (Tex.App.—Fort Worth 1989, writ denied). The *Armendarez* court held that a medical doctor is not entitled to immunity if the doctor's duties are neither uniquely governmental in purpose or different from the duties of a doctor in pri-

vate practice. In the present case, GAB was not performing uniquely governmental duties; it was acting just as an adjuster for a private insurance company would. We are not persuaded that GAB is entitled to official or governmental immunity. The trial court committed no error in refusing to grant a directed verdict on the basis of governmental immunity.

GAB also contended that the Texas Tort Claims Act, TEX.CIV.PRAC. & REM.CODE § 101.001, et seq. (Vernon 1986 & Supp. 1991), does not allow recovery of the type Moore sought. GAB was not entitled to immunity, however, so the extent to which the Tort Claims Act allows recovery is irrelevant. These points are overruled.

GAB next contends that the trial court erred in refusing to allow an excerpt from Patricia Strobel's deposition to be read to the jury. The excerpt contains questions that were objected to as leading. The court sustained this objection.

■ The portion of the deposition in which these questions appear is clearly marked "cross-examination." Ordinarily, leading questions should be permitted on cross-examination. TEX.R.CIV.EVID. 611(c). The purpose of the qualification "ordinarily" is to furnish a basis for denying the use of leading questions when the cross-examination is of a friendly witness, for example, the cross-examination of a party by his own counsel after the party was called by the opponent. TEX.R.CIV.EVID. 611(c) (Notes and comments).

■ The deponent, Patricia Strobel, was an employee of GAB, whose counsel was asking the questions. When this deposition was taken, Strobel was no longer working for GAB, but she could still be characterized as a friendly witness. Rule 611(c) gives the trial judge discretion to limit the use of leading questions in cross-examining a friendly witness.

■ Leading questions are questions that suggest the desired answer. *Implement Dealers Mutual Ins. Co. v. Castleberry*, 368 S.W.2d 249, 253 (Tex.Civ.App.—Beaumont 1963, writ ref'd n.r.e.). The questions Moore objected to as leading called for yes or no answers.[1] A question framed so that a yes or no answer will enable the witness to merely echo the words of counsel is leading. *Texas Employers' Ins. Ass'n v. Hughey*, 266 S.W.2d 456, 458 (Tex.Civ.App.—Fort Worth 1954, writ ref'd n.r.e.). A leading question is one which instructs the witness how to answer or puts words into the witness' mouth to be echoed back. *Myers v. State*, 781 S.W.2d 730, 733 (Tex.App.—Fort Worth 1989, pet. ref'd).

■ The trial judge did not err by keeping out these questions and answers. Moreover, even if it had been error, it would not have been harmful. The questions inquired whether Strobel had access to certain medical records in handling Moore's claim. Moore had already shown, as part of her prima facie case, that GAB had these records in its files when it denied her claim. The excluded testimony was merely cumulative of what had already been presented to the jury. The point is overruled.

The judgment of the trial court is affirmed.

---

1. Q. Did you have the benefit of Dr. Duncan's report of March 26, 1987, where he indicated he wanted to run a CAT scan of Ms. Moore's low back, and if it was negative, he was going to proceed as though her injury was a mild ligamentous type strain?
   A. Yes, sir.
   . . . .
   Q. Did you also have the benefit of Dr. Duncan's report of April the 14th, 1987, where he reported that Ms. Moore's CAT scan was negative and the EMG or the nerve conduction study performed by Dr. Adams was also negative?
   . . . .
   A. Yes, sir.
   Q. Did you have, in considering Ms. Moore's claim, the report of Dr. Duncan dated 6–3–87 where he makes no mention of any back problem?
   A. Yes, sir.