In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-05-00060-CV
______________________________


TITUS REGIONAL MEDICAL CENTER AND
STEVE JACOBSON, INDIVIDUALLY, Appellants
 
V.
 
JOSEPH T. TRETTA, D.O., Appellee


                                              

On Appeal from the 276th Judicial District Court
Titus County, Texas
Trial Court No. 29692


                                                 



Before Ross, Carter, and Cornelius,* JJ.
Opinion by Justice Cornelius
*William J. Cornelius, C.J., Retired, Sitting by Assignment


O P I N I O N

          This is a suit by Joseph T. Tretta, D.O., against Titus Regional Medical Center and
Steve Jacobson, individually. In his amended petition, Tretta raised numerous claims
sounding in tort, breach of contract, defamation, conspiracy, and statutory violations that
allegedly damaged his professional and personal reputation, his business, and his
prospects for future employment. The principal basis for Tretta's suit was his allegation
that, when one of his patients died after he performed endoscopic sinus surgery on her,
Jacobson and the Hospital set out to damage Tretta's professional practice and reputation
and force him to leave the hospital through a conspiracy to improperly investigate him for
professional incompetence, and falsely report to the National Practitioner Data Bank
(NPDB) that he resigned from the Hospital while he was being investigated.
          Jacobson and the Hospital filed motions to dismiss and a motion for summary
judgment based on claims that Jacobson was entitled to official immunity as to all claims
against him, and the Hospital was entitled to sovereign immunity from both suit and liability
as to contractual claims against it. The trial court granted the motion for summary
judgment and plea to dismiss sustaining Jacobson's claim of official immunity as to the tort
claims, but denied the motion and plea as to all other claims. The trial court denied the
Hospital's motion for summary judgment for sovereign immunity on the contract,
declaratory, and injunctive relief claims. Both Jacobson and the Hospital appeal pursuant
to Tex. Civ. Prac. & Rem. Code Ann. § 51.014(a)(5), (8) (Vernon Supp. 2005).
          We reverse the trial court's order denying Jacobson's motion for summary judgment
as to all claims other than tort claims, and affirm the trial court's judgment insofar as it
grants Jacobson judgment on the tort claims, and we affirm the trial court's denial of the
Hospital's motion for summary judgment on the contract, declaratory, and injunctive relief
claims.
          When a defendant moves for summary judgment on the basis of an affirmative
defense such as immunity, the defendant must prove by competent summary judgment
evidence each element of the defense as a matter of law. City of Lancaster v. Chambers,
883 S.W.2d 650, 653 (Tex. 1994); Montgomery v. Kennedy, 669 S.W.2d 309, 310–11
(Tex. 1984).
          Official immunity is an affirmative defense that protects an officer or employee of
a governmental entity from liability when that officer or employee (1) acts in the scope of
his employment, (2) performs discretionary duties, and (3) acts in good faith. Univ. of
Houston v. Clark, 38 S.W.3d 578, 580 (Tex. 2000); Wadewitz v. Montgomery, 951 S.W.2d
464, 466 (Tex. 1997); Johnson v. Campbell, 142 S.W.3d 592, 594 (Tex. App.—Texarkana
2004, pet. denied). If the officer or employee acts within the scope of his authority in the
performance of discretionary duties and acts in good faith, he is entitled to official immunity
even though his acts are negligent or against the governmental entity's regulations or
policy. City of Lancaster v. Chambers, 883 S.W.2d at 655; Johnson v. Campbell, 142
S.W.3d at 594.
          Sovereign immunity has two components: (1) immunity from suit, and (2) immunity
from liability. Tex. Natural Res. Conservation Comm'n v. IT-Davy, 74 S.W.3d 849, 853–54
(Tex. 2002); Longview Indep. Sch. Dist. v. Vibra-Whirl, Ltd., 169 S.W.3d 511, 513 (Tex.
App.—Texarkana 2005, no pet.). Generally, the State's immunity from liability is waived
when the State enters into a contract with a private party or entity. Fed. Sign v. Tex. S.
Univ., 951 S.W.2d 401, 405 (Tex. 1997). The State is amenable to suit if it waives its
immunity from suit by giving express consent to the suit. Longview Indep. Sch. Dist. v.
Vibra-Whirl, Ltd., 169 S.W.3d at 513.
          In considering whether Jacobson's summary judgment evidence conclusively proved
he is entitled to official immunity, we first determine if he, as chief executive officer (CEO)
and administrator of the Hospital, is entitled to official immunity if he is otherwise qualified. 
The summary judgment evidence shows that the Hospital is a governmental entity, but it
also shows that Jacobson was not an employee of the Hospital. Instead, he was an
employee of Quorum, a hospital staffing company that by contract provided him to the
Hospital as CEO and administrator. Tretta contends that, because Jacobson was not an
employee of the Hospital, he is not entitled to official immunity. We disagree. The majority
rule, and we think the better rule, is that official immunity does extend to a private party
acting pursuant to a contract with a governmental entity as an official fulfilling statutorily
mandated functions. Guerrero v. Tarrant County Mortician Servs., 977 S.W.2d 829, 832
(Tex. App.—Fort Worth 1998, pet. denied); Knowles v. City of Granbury, 953 S.W.2d 19,
24 (Tex. App.—Fort Worth 1997, writ denied); Putthoff v. Ancrum, 934 S.W.2d 164,
169–73 (Tex. App.—Fort Worth 1996, writ denied). To deny official immunity to a person
in such circumstances would, in the words of the court in De Vargas v. Mason & Hanger-Silas Mason Co., 844 F.2d 714, 722 (10th Cir. 1988), place defendants "between Scylla
and Charybdis—potentially liable either to plaintiffs for obeying the contract, or to
governmental bodies for breaching it." Other federal cases support this majority rule. See
Eagon v. City of Elk City, Okla., 72 F.3d 1480, 1489–90 (10th Cir. 1996); Williams v.
O'Leary, 55 F.3d 320, 323–24 (7th Cir. 1995); Sherman v. Four County Counseling Ctr.,
987 F.2d 397 (7th Cir. 1993); Frazier v. Bailey, 957 F.2d 920, 928–29 (1st Cir. 1992);
Citrano v. Allen Correctional Ctr., 891 F.Supp. 312, 315–20 (W.D. La. 1995). Tretta relies
on our case of GAB Bus. Servs. v. Moore, 829 S.W.2d 345 (Tex. App.—Texarkana 1992,
no writ), for a contrary holding. That case, however, is distinguishable. As we noted in our
opinion in that case, GAB was a private company providing insurance adjusting services
to the State Risk Pool. We noted that GAB was not the agent of the Risk Pool; GAB was
not performing uniquely governmental services, but was merely acting as a private adjuster
would; and GAB did not act in good faith. The summary judgment evidence here
conclusively shows that Jacobson, as the duly appointed CEO and administrator for the
Hospital, is entitled to official immunity if his acts meet the other criteria for official
immunity.
          We now determine if the summary judgment evidence conclusively shows that
Jacobson was acting within the scope of his authority and performing discretionary duties
in good faith.
          A person acts within the scope of his authority if he is discharging the duties
assigned to him. The fact that an act that forms the basis of a suit was performed
improperly or negligently does not take it outside the actor's scope of authority. City of
Lancaster v. Chambers, 883 S.W.2d at 658 & n.9.
          If a duty involves personal deliberation, decision, and judgment, it is a discretionary
duty. Acts that require specific obedience to orders that must be performed with such
precision and certainty that nothing is left to the exercise of discretion or judgment, are
ministerial. Kassen v. Hatley, 887 S.W.2d 4, 9 (Tex. 1994); City of Lancaster v. Chambers,
883 S.W.2d at 653–54; Putthoff v. Ancrum, 934 S.W.2d at 170. Mandatory language in
a statute or policy does not, of itself, make an act ministerial. Eakle v. Tex. Dep't of Human
Servs., 815 S.W.2d 869, 876 (Tex. App.—Austin 1991, writ denied); Austin v. Hale, 711
S.W.2d 64 (Tex. App.—Waco 1986, no pet.). Executives and supervisors of State entities
have uniquely discretionary authority. Lowrey v. Univ. of Tex. Med. Branch, 837 S.W.2d
171, 176 (Tex. App.—El Paso 1992, writ denied); Lazaro v. Univ. of Tex. Health Sci. Ctr.,
830 S.W.2d 330, 332 (Tex. App.—Houston [14th Dist.] 1992, writ denied). Professionals
who conduct or supervise investigations for State entities are performing discretionary acts. 
Heikkila v. Harris County, 973 S.W.2d 333, 336 (Tex. App.—Tyler 1998, pet. denied).
          Jacobson was the CEO and administrator of the Hospital. The Texas Legislature's
Act creating the Titus Regional Hospital District provides that the CEO and administrator
shall perform all duties required of him by the Board and "shall supervise all of the work
and activities of the district, and have general direction of the affairs of the District, within
such limitations as may be prescribed by the Board." The Board of Managers' By-Laws
contain exactly the same language defining the CEO's authority. The CEO is an ex-officio
member of all medical committees of the Hospital. He is responsible for preparing the
agenda for the committee meetings, giving notice to all persons who may be asked or
permitted to appear at such meetings, and providing the committee members with
whatever evidence and records they may need in their meetings. The CEO attends most
committee meetings, but does not vote. He makes periodic reports to the Board and
prepares the budget for the District. He is the supervisor of all of the Hospital's employees,
and has the authority to hire and terminate any employee for good cause, reporting such
action to the Board. Jacobson had the authority and duty to make, and did make, all
reports to federal and state authorities, including the NPDB, about the medical services
and affairs of the Hospital, and was the Hospital's official representative for that purpose. 
Tretta testified in his deposition that "everything" had to "go through" Jacobson, and that
Jacobson sat in on every committee meeting and he made all the decisions. The By-Laws
of the Board of Managers provides that no information relating to a "sentinel event"


 may
be released by anyone except the CEO following consultation with the Board. One of
Jacobson's acts that Tretta alleges as a part of Jacobson's conspiracy to damage him is
Jacobson's unilateral action in suspending all endoscopic sinus surgeries at the Hospital
after Ms. Mary Woods died following surgery performed by Tretta. Jacobson, in his
deposition, stated he made the decision to suspend all of those surgeries in order to
ensure patient safety until a thorough investigation could be made. This decision by
Jacobson obviously was a discretionary act in connection with his general supervisory
authority over all of the operations and activities of the Hospital.
          The summary judgment evidence conclusively proves that Jacobson was acting in
the scope of his authority and was performing discretionary duties at the time and on the
occasions relevant to this action.
          The summary judgment evidence also conclusively proves that Jacobson was acting
in good faith when he took the actions on which this suit is based. There is competent
summary judgment evidence that other reasonable hospital administrators in Jacobson's
position could have reasonably believed that the actions, reports, and statements made
by Jacobson were justified. That is the test for good faith in the context of an official
immunity claim. City of Lancaster v. Chambers, 883 S.W.2d at 657; Johnson v. Campbell,
142 S.W.3d at 594. The test is an objective one. To avoid summary judgment on the
issue of good faith, Tretta must have produced objective summary judgment evidence from
a qualified witness who, after reviewing the facts, concludes that no reasonable person in
Jacobson's position could have believed Jacobson's actions were justified. There is no
summary judgment evidence to that effect in this record.
          Tretta argues there is summary judgment evidence that Jacobson disliked him and
deliberately tried to prejudice his position and future at the Hospital. But probative
evidence on good faith is limited to objective evidence. Good faith in official immunity
cases must be measured against a standard of objective legal reasonableness, without
regard to the official's subjective state of mind. Ballantyne v. Champion Builders, Inc., 144
S.W.3d 417, 427 (Tex. 2004); Wadewitz v. Montgomery, 951 S.W.2d at 466.
          The trial court properly denied the Hospital's motion for summary judgment on the
basis of sovereign immunity. When a governmental entity enters into a contract with a
private person or private entity, it waives its immunity from liability as to claims arising
under or pertaining to that contract. Fed. Sign v. Tex. S. Univ., 951 S.W.2d at 405. The
Hospital here contracted with Tretta with respect to his services at the Hospital, so it has
no sovereign immunity from claims pertaining to that contract.


 See Longview Indep. Sch.
Dist. v. Vibra-Whirl, Ltd., 169 S.W.3d at 513. The Hospital is not entitled to immunity from
suit, because the Legislature's Act creating the Hospital District provides that the Hospital's
Board of Managers shall have the power and authority to "sue and be sued." Immunity
from suit against a State entity may be waived only if the State has expressly given its
consent to be sued. The Texas Supreme Court held in Missouri Pac. R.R. Co. v.
Brownsville Navigation Dist., 453 S.W.2d 812, 813 (Tex. 1970), that statutory language
providing that a State entity may "sue and be sued" gives consent to suit and expressly
waives the State's immunity from suit. We have followed the Missouri Pacific case in
Longview Indep. Sch. Dist. v. Vibra-Whirl, Ltd., 169 S.W.3d 511; S. Disposal, Inc. v. City
of Blossom, 165 S.W.3d 887, 892 n.4 (Tex. App.—Texarkana 2005, no pet.); and City of
Texarkana v. City of New Boston, 141 S.W.3d 778, 786–87 (Tex. App.—Texarkana 2004,
pet. filed). Some courts have held otherwise, but we choose to continue to follow the
Texas Supreme Court decision in Missouri Pacific. We therefore conclude that the
summary judgment evidence here shows that the Hospital is not entitled to sovereign
immunity either from suit or liability as to claims pertaining to its contract with Tretta.
          Jacobson and the Hospital also contend the trial court erred in overruling their
objections numbers 12 and 13 to Tretta's summary judgment evidence. The objections
were to allegedly hearsay statements made by Carol Ann Robinson that were repeated by
Tretta in his deposition. Robinson was Chief of Medical Records at the Hospital. 
Consequently, her statements were not hearsay. Tex. R. Evid. 801(e)(2)(D).
          For the reasons stated, we affirm the trial court's order granting Jacobson and the
Hospital's motion for summary judgment as to Tretta's tort claims, and we affirm the trial
court's order denying the Hospital's motion for summary judgment as to contract,
declaratory, and injunctive relief. We reverse the trial court's order denying Jacobson and
the Hospital's motion for summary judgment on all remaining claims, and here render
summary judgment for Jacobson and the Hospital on all claims based on Jacobson's
individual liability. 
 
                                                                           William J. Cornelius
                                                                           Justice*

Date Submitted:      October 19, 2005
Date Decided:         November 21, 2005

*Chief Justice, Retired, Sitting by Assignment
           



by the child on the tape,
of her unusual behavior in trying to encourage Griffith to participate with her in a sexual
demonstration, of her actions clearly describing and demonstrating on a couch what happened to her
and of knowing it felt good.

 An expert witness may not testify that a witness is truthful, but an expert may testify that the
child exhibits symptoms consistent with sexual abuse.  Cohn v. State, 849 S.W.2d 817, 819 (Tex.
Crim. App. 1993). The witness may not "cross the line" and testify directly as to the victim's
truthfulness, as it does not concern a subject matter on which the testimony of an expert witness
could assist the trier of fact. Yount v. State, 872 S.W.2d 706, 709 (Tex. Crim. App. 1993). 

 To be admissible, expert testimony must "assist" the trier of fact. Tex. R. Evid. 702; Duckett
v. State, 797 S.W.2d 906, 914 (Tex. Crim. App. 1990). Expert testimony assists the trier of fact
when the jury is not qualified to "the best possible degree" to determine intelligently the particular
issue without the help of the testimony. Duckett, 797 S.W.2d at 914. But, the expert testimony must
aid--not supplant--the jury's decision. Id. Expert testimony does not assist the jury if it constitutes
"a direct opinion on the truthfulness" of a child complainant's allegations. Yount, 872 S.W.2d at 708.

 The evidence here does more than describe characteristics common among sexually abused
children. Wagoner was asked about factors to determine if a child was "telling the truth." After
describing the factors for truthfulness, the witness was asked, "How does [the victim] fit . . . into
what those factors are?" The witness then testified she exhibited such factors. McCarty likewise
testified over objection as to factors that indicated to her the child exhibited some indicia of
truthfulness in the interview.

 The witnesses here were asked to comment directly on factors to determine if the child was
telling the truth. These observations, such as age, level of development, sexual knowledge,
opportunity, and access, may all be judged and determined by a jury without the help of an expert.

 We find that the testimony regarding the factors for truthfulness observed by the experts
directly comment as to the truthfulness of the child. As such, it does not assist the jury and is
inadmissible. Tex. R. Evid. 702.

IV. Medical History Testimony

 Edwards further urges that the trial court erred by allowing the testimony of Geri Lawson,
the sexual assault nurse examiner, concerning statements the child made to her during a medical
examination.

 The evidence shows the child was taken to the nurse for a medical examination at the
hospital. Rule 803(4) of the Texas Rules of Evidence provides an exception to the hearsay rule for
"statements made for purposes of medical diagnosis or treatment and describing medical history, or
past or present symptoms, pain, or sensations, or the inception or general character of the cause or
external source thereof insofar as reasonably pertinent to diagnosis or treatment." Tex. R. Evid.
803(4); Mendoza v. State, 69 S.W.3d 628, 633 (Tex. App.-Corpus Christi 2002, pet. ref'd); Beheler
v. State, 3 S.W.3d 182, 188 (Tex. App.-Fort Worth 1999, pet. ref'd); Torres v. State, 807 S.W.2d
884, 886-87 (Tex. App.-Corpus Christi 1991, pet. ref'd) (finding emergency room nurse could testify
as to victim's statement under Rule 803(4) even though nurse was also collecting evidence). 

 Edwards challenges this evidence on the basis that it violates her right of confrontation under
the Sixth Amendment to the United States Constitution. She cites Lopez v. State, 18 S.W.3d 220
(Tex. Crim. App. 2000), for the proposition that the Confrontation Clause will prevail if there is a
conflict between it and the Rules of Evidence. In Lopez, the defendant was attempting to present
evidence that the victim had previously made false accusations of sexual assault against other
individuals. The State objected under Rule 608(b) of the Texas Rules of Evidence. The issue was
whether the Confrontation Clause demanded that the evidence of the complainant's prior false
allegations of abuse against a person other than the defendant was admissible despite Rule 608(b)'s
proscription against admitting specific instances of conduct. Id. at 222-23. The Texas Court of
Criminal Appeals stated that "the Confrontation Clause occasionally may require the admissibility
of evidence that the Rules of Evidence would exclude." Id. at 225. The final conclusion of the court
was that such evidence was inadmissible and the Confrontation Clause did not mandate its
admissibility. Id. at 226.

 In this case, Edwards is arguing for the exclusion of evidence rather than its admissibility,
as in Lopez.

 As we have previously discussed, not all out-of-court statements are prohibited by the
Confrontation Clause. Wright, 497 U.S. 805. If the statement does fall within a firmly rooted
hearsay exception, then reliability can be inferred without more. There is no doubt the exception for
statements made for purposes of medical diagnosis or treatment is firmly rooted. White, 502 U.S.
at 356 n.8; United States v. Sumner, 204 F.3d 1182 (8th Cir. 2000).

 As the medical diagnosis hearsay exception is well established as a firmly rooted exception
to the hearsay rule, admission of this evidence does not violate the Confrontation Clause of the Sixth
Amendment to the United States Constitution. The testimony of the sexual assault nurse examiner
was properly admitted.





 We reverse the judgment and remand the cause to the trial court for further proceedings
consistent with this opinion.




 Jack Carter

 Justice


Date Submitted: March 26, 2003

Date Decided: April 22, 2003


Publish






OPINION ON MOTION FOR REHEARING

 The State urges this Court to remand the case to the trial court for a hearing on the
unavailability of the child complainant and to reconsider our finding that the expert witness
testimony was inadmissible or, alternatively, to conduct a harm analysis concerning the expert
witness testimony.

 The State cites the cases of Hightower v. State, 822 S.W.2d 48 (Tex. Crim. App. 1991), and
Driggers v. State, 940 S.W.2d 699 (Tex. App.-Texarkana 1996, pet. ref'd), in support of its motion
to remand to the trial court for a hearing on the issue of the unavailability of the child complainant
to testify.

 In Hightower, the issue was whether the trial court had complied with the constitutional
requirements of Maryland v. Craig, 497 U.S. 836 (1990), requiring a court to hear evidence and
make specific findings to authorize closed-circuit television testimony by a child. The Texas Court
of Criminal Appeals stated the trial court had not complied with these requirements, but also noted
the trial court did not have the benefit of the Craig opinion before it proceeded.  Hightower, 822
S.W.2d at 51. Therefore, the Texas Court of Criminal Appeals abated the appeal and authorized the
trial court to conduct such a hearing and enter findings and conclusions.

 In Driggers, the trial court had conducted an evidentiary hearing to determine whether to
allow closed-circuit testimony of a child. The trial court granted the motion. This Court concluded
such oral finding by the court was inadequate and abated the case for more specific findings.

 We find those two cases altogether different from the case at bar. Unlike Hightower, the law
did not change in this case after trial. The statutory requirement for the court to make a
determination of unavailability of a child before allowing an alternate method for the child's
testimony has been in effect in this state for many years. This statutory requirement has not been
fulfilled, and the trial court abused its discretion by admitting evidence without complying with the
statute.

 In Driggers, the trial court had conducted an evidentiary hearing and made a determination. 
This is also different from the present case, where no evidence was presented to the court and no
hearing was conducted. Here, there is nothing on which to base a determination by the trial court
that the child was unavailable.

 As we do not believe it is appropriate at this late date to abate this appeal, it is unnecessary
to conduct a harm analysis concerning the expert testimony. We have specified the inadmissible
portions of the testimony of the expert witnesses to assist in any further proceedings.

 The State's motion for rehearing is denied.




 Jack Carter

 Justice


Date: May 14, 2003


Publish
1. Tex. Code Crim. Proc. Ann. art. 38.071 (Vernon Supp. 2003).
2. In Idaho v. Wright, the Court determined that it was appropriate to apply the same analysis
to such evidence as to other types of hearsay and applied the "indicia of reliability" requirement to
determine whether a firmly rooted hearsay exception allowed its admission, or alternatively, if the
evidence was supported by a showing of particularized guarantees of trustworthiness. 497 U.S. 805,
816 (1990).
3. The analysis of procedures for in-court testimony such as closed circuit television should
be conducted in accordance with Maryland v. Craig, 497 U.S. 836, 845 (1990), and Coy v. Iowa, 487
U.S. 1012, 1019 (1988), requiring the witness to be unavailable to authorize such modified in-court
testimony; whereas, in White v. Illinois, the court determined it is not necessary to prove a child
needs protection of his or her physical or psychological well-being as a prerequisite to introducing
statements the child made out of court. 502 U.S. 346, 358-59 (1992).