Karen **GUERRERO**, Betty Ripple, Paula Gilbreath Watson, Sherri Rose, Monty Pitts, and Ginger Pitts, Appellants,

v.

**TARRANT COUNTY MORTICIAN SERVICES COMPANY, a General Partnership, Tom Ramsey, Pam Ramsey, David Phillips, Thomas E. Bergeron, Individually d/b/a Tarrant County Mortician Services Company, Appellees.**

No. 2–97–128–CV.

Court of Appeals of Texas, Fort Worth.

Sept. 17, 1998.

or crime scene, they report to the Medical Examiner's investigator who tells them whether or not they can go into the scene and get the body. Once the body can be removed, Mortician Services personnel wrap the body and any body parts in a clean white sheet, put the wrapped body in a body bag, and drive the body to the Medical Examiner's Office. Mortician Services' contract with the Medical Examiner's Office provides that each call should last no longer than two hours.

Law Offices of Joseph E. Ashmore, Jr., P.C., C. Gregory Shamoun, Howard J. Klatsky, W. Charles Campbell, Dallas, for appellants.

Haynes and Boone, L.L.P., Craig M. Price, Patrick S. Dohoney, Fort Worth, for appellees.

Before DAY, LIVINGSTON and BRIGHAM, JJ.

## OPINION

BRIGHAM, Justice.

## I. INTRODUCTION AND HOLDING

In this appeal, we are asked to decide whether a company that contracted with a county to transport bodies from an accident scene is entitled to immunity and whether such a company, which did not pick up all body parts from the scene, established that it was performing a discretionary duty in good faith. We find that the private company is entitled to official immunity and that it established its entitlement to the affirmative defense.

## II. FACTUAL BACKGROUND

### A. The Contract

Tarrant County Mortician Services Company, a privately-owned business, contracted with Tarrant County to pick up and transport human remains for the Tarrant County Medical Examiner's Office. When Mortician Services personnel are called to an accident

### B. The Accident

On October 5, 1991 at 1:45 a.m., Seantre Faulkner crashed his truck into a guardrail. Although Faulkner survived, his three passengers, Lydia Henshaw, Thomas Guerrero, and Jerry Lollar, died.[1] Henshaw was thrown from the truck, and all three died of "craniofacial and cerebral trauma." At 3:15 a.m., Keith Clayton, the investigator for the Medical Examiner's Office, was called to the scene to investigate the cause of death. He called Mortician Services to meet him at the scene. When he arrived at 3:30 a.m., Fort Worth police had closed off the street and had moved the bodies and the wrecked truck to the side of the road. At that time, Mortician Services personnel and Clayton began collecting the victims' remains. The police helped with the search by directing Clayton and Mortician Services personnel to locations where body tissue and parts, which had been severed from the victims during the accident, could be located based on where the police found the victims when they arrived at the scene. After a 2½ hour search, Mortician Services transported the victims to the Medical Examiner's Office.

### C. The Lawsuit

During the next two days, relatives of the victims visited the crash site. They saw teeth, brain matter, blood, hair, and fingers by the side of the road. As a result of this experience, they sued Mortician Services for negligence, intentional infliction of emotional distress, and violations of the Deceptive

---

1. Faulkner was convicted of involuntary manslaughter. *See Faulkner v. State*, 940 S.W.2d 308 (Tex.App.—Fort Worth 1997, pet. ref'd) (en banc op. on reh'g).

Trade Practices Act. Mortician Services moved for summary judgment based on official immunity. The trial court granted Mortician Services summary judgment on that basis, and the relatives appeal that judgment.[2]

### III. STANDARD OF REVIEW

We review the summary judgment granted in this case under the familiar standard: (1) the movant for summary judgment has the burden of showing that there is no issue of material fact and that it is entitled to judgment as a matter of law; (2) in deciding whether there is a disputed material fact issue precluding summary judgment, evidence favorable to the nonmovants will be taken as true; (3) every reasonable inference must be indulged in favor of the nonmovants and any doubts resolved in their favor. *See Nixon v. Mr. Property Management Co.,* 690 S.W.2d 546, 548–49 (Tex.1985).

■ A defendant is entitled to summary judgment on an affirmative defense if the defendant conclusively proves all the elements of the affirmative defense as a matter of law such that there is no genuine issue of material fact. *See Randall's Food Mkts., Inc. v. Johnson,* 891 S.W.2d 640, 644 (Tex. 1995). To accomplish this, the defendant-movant must present summary judgment evidence that establishes each element of the affirmative defense. *See Ryland Group, Inc. v. Hood,* 924 S.W.2d 120, 121 (Tex.1996).

### IV. OFFICIAL IMMUNITY

#### A. MORTICIAN SERVICES AS A PRIVATE PARTY

■ Appellants argue that Mortician Services cannot assert the defense of official immunity because it is not a government officer. We have held that a private party can assert official immunity if the private party contracts with a public official to perform governmental duties. *See Knowles v. City of Granbury,* 953 S.W.2d 19, 24 (Tex.

App.—Fort Worth 1997, pet. denied); *Putthoff v. Ancrum,* 934 S.W.2d 164, 169–70 (Tex.App.—Fort Worth 1996, writ denied). As we stated above, Mortician Services contracted with the Medical Examiner's Office to perform the governmental duty of removing bodies from an accident or crime scene. We decline Appellants' invitation to revisit our prior rulings on this subject and hold that Mortician Services was entitled to assert the defense of official immunity. We overrule Appellants' fourth point.

#### B. THE LAW REGARDING OFFICIAL IMMUNITY

■ "Government employees are entitled to official immunity from suit arising from the performance of their (1) discretionary duties in (2) good faith as long as they are (3) acting within the scope of their authority."[3] *City of Lancaster v. Chambers,* 883 S.W.2d 650, 653 (Tex.1994). If the acts of an official are not lawfully authorized, then a suit against that official is not a suit against the State, and the individual official is not immune. *See Cobb v. Harrington,* 144 Tex. 360, 190 S.W.2d 709, 712 (1945). Unlawful or unauthorized acts are not considered acts of the State, and state officials can be sued in their individual capacities for wrongful unofficial acts. *See Lowrey v. University of Tex. Medical Branch at Galveston,* 837 S.W.2d 171, 176 (Tex.App.—El Paso 1992, writ denied).

#### C. DISCRETIONARY DUTY

■ Appellants challenge Mortician Services' entitlement to summary judgment based on official immunity because Mortician Services was performing a ministerial and not a discretionary act. For the majority of their argument, Appellants refer us to "the arguments made on this issue in their responses to [Mortician Services'] motions for summary judgment." Were we to approve of this tactic, appellate briefs would be reduced to a simple appellate record reference to a

---

2. We will refer to the victims' relatives as "Appellants."

3. Appellants do not argue that Mortician Services was not acting within the scope of its

authority. *See also Smith v. Tarrant County,* 946 S.W.2d 496, 502 (Tex.App.—Fort Worth 1997, writ denied) (op. on reh'g); *Putthoff,* 934 S.W.2d at 170.

party's trial court arguments. Additionally, this would be an open door for parties to circumvent the appellate brief page limitations. *See* TEX.R.APP. P. 38.4; 2D TEX.APP. (FORT WORTH) LOC. R. 1.G. Accordingly, we will only consider the "additional arguments" Appellants discuss in their brief to support this point.

■ Appellants assert that the summary judgment evidence established that Mortician Services had no discretion regarding what they were required to do, making its actions ministerial. Appellants rely on the deposition testimony of Tom Ramsey, a general partner of Mortician Services. In his deposition, Ramsey stated that Mortician Services had a duty to locate and pick up all body parts. Appellants believe that these statements show that Mortician Services had no discretion regarding what they were required to do at the scene.

■ The distinction between a ministerial duty and a discretionary one turns on whether the law dictates how the task is to be performed:

> Ministerial acts are those "[w]here the law prescribes and defines the duties to be performed with such precision and certainty as to leave nothing to the exercise of discretion or judgment ... but where the act to be done involves the exercise of discretion or judgment, it is not to be deemed merely ministerial".... If an action involves personal deliberation, decision and judgment, it is discretionary; actions which require obedience to orders or the performance of a duty to which the actor has no choice, are ministerial.

*Kassen v. Hatley*, 887 S.W.2d 4, 9 (Tex.1994) (quoting *City of Lancaster*, 883 S.W.2d at 654). In this case, the Tarrant County Medical Examiner contracted with Mortician Services to perform a statutory function on his behalf: a medical examiner is statutorily authorized to take charge of a decedent and all property found with the decedent if the next of kin or legal representative is not present. *See* TEX.CODE CRIM. PROC. ANN. art. 49.25, § 6(c) (Vernon Supp.1998). This statute is completely silent regarding *how* the medical examiner must take charge of the body or remains of a decedent. In fact, Ramsey affirmed that "no one tells [him] what body parts not to pick up." Further, the contract did not specify *how* Mortician Services was to find and retrieve the remains other than Mortician Services was to wrap the remains in a sheet. The acts Mortician Services contracted to do on behalf of the Medical Examiner's Office are certainly discretionary duties as defined in *Kassen.* We overrule point five.

### D. GOOD FAITH

#### 1. The Clayton Affidavit

Appellants first attack Mortician Services' evidence regarding good faith by arguing that Clayton was not competent to file an affidavit on this matter. Specifically, appellants posit that the Clayton affidavit is not competent summary judgment evidence of good faith because it only discussed Clayton's actions at the accident scene and not the actions of Mortician Services personnel.

■ As the Medical Examiner's death investigator who was called to the scene, Clayton was responsible for investigating the time, place, and manner of death. *See* TEX. CODE CRIM. PROC. ANN. art. 49.23(c) (Vernon Supp.1998). As a deputy of the Medical Examiner, he further had to "take charge of the body and all property found with it." *Id.* art. 49.25, § 6(c). Thus, in order to discharge his statutory duty, Clayton was required to find and collect all body parts. Clayton and Mortician Services had a common purpose: to collect the bodies and get them transported to the Medical Examiner's Office. As an official in the same position with the same goal as Mortician Services, Clayton was competent to testify regarding what constitutes good faith in the collection of bodies at an accident scene. Additionally, because Clayton was a former sheriff's deputy and is a death investigator, Clayton was qualified to testify as an expert in the collection of bodies and their transport to the Medical Examiner's Office. *See generally* TEX.R. EVID. 702. Thus, the trial court did not abuse its discretion in accepting Clayton's affidavit. *See United Blood Servs. v. Longoria*, 938 S.W.2d 29, 30–31 (Tex.1997). We overrule point three.

## 2. Summary Judgment Evidence of Good Faith

Appellants finally argue that we should reverse the summary judgment because Mortician Services did not conclusively prove good faith and because Appellants raised a fact issue regarding good faith.

Good faith in official immunity is a doctrine of "objective legal reasonableness." *City of Lancaster,* 883 S.W.2d at 656. The good-faith prong of official immunity is met when it is shown that a reasonably prudent person in the same or similar circumstances would have taken the same actions. *See Putthoff,* 934 S.W.2d at 172. To controvert such summary judgment evidence, the plaintiff must do more than show a reasonably prudent person would not have taken the same action and must show that no reasonable person in the defendant's position could have thought the facts justified the defendant's actions. *See City of Lancaster,* 883 S.W.2d at 657. In this analysis, the trial court must focus on the reasonableness of what the defendant could have believed and not what a reasonably prudent person would have done. *See Wadewitz v. Montgomery,* 951 S.W.2d 464, 467 n. 1 (Tex.1997). In other words, controverting evidence on good faith cannot be based on a general negligence standard. *See id.*

Appellants argue that Carlos Reyes's[4] affidavit created a fact question on Mortician Services' good faith. Reyes stated in his affidavit that Mortician Services "failed to do that which an ordinary prudent person/entity would have done under the same or similar circumstances." Reyes further describes what an ordinary prudent person would have done in this situation. Thus, Appellants argue, no reasonable person in Mortician Services' position would have acted as they did.

Reyes's affidavit only establishes his belief that Mortician Services was negligent in the performance of its duties. Further, Reyes does not consider whether a reasonable body transport company *in the same or similar circumstances* would have acted differently: Reyes fails to take into account that the bodies had been moved before Clayton or

Mortician Services arrived at the scene and that they had to rely on Fort Worth police in locating the body parts. Such evidence does not raise a fact issue regarding Mortician Services' good faith. *See Putthoff,* 934 S.W.2d at 173; *City of Houston v. Newsom,* 858 S.W.2d 14, 18 (Tex.App.—Houston [14th Dist.] 1993, no writ); *cf. Tarrant County v. Dobbins,* 919 S.W.2d 877, 883 (Tex.App.—Fort Worth 1996, writ denied) (finding affidavit stating death investigator "violated the standard of care" in combination with statements that supported investigator's good faith did not establish the *City of Lancaster* standard).

Conversely, Mortician Services established that they were acting in good faith. After describing the circumstances surrounding the accident scene and the action he, Mortician Services, and Fort Worth police took, Clayton stated that any officer in his situation, as Mortician Services was, could have determined that all of the body parts had been recovered for transport to the Medical Examiner's Office. In the absence of any controverting evidence, Mortician Services established that they acted in good faith as a matter of law. We overrule points one and two.

## V. CONCLUSION

Because Mortician Services established as a matter of law that it performed a discretionary duty within the scope of its authority in good faith, it was entitled to summary judgment on its affirmative defense of official immunity. We affirm the trial court's judgment.

---

4. Reyes is a funeral director and embalmer.