COURT
OF APPEALS

                                       SECOND
DISTRICT OF TEXAS

                                                   FORT
WORTH

 

                                        NO.  2-06-187-CV

 

JUDY ALLEN, INDEPENDENT ADMINISTRATRIX                      APPELLANTS

OF
THE ESTATE OF MARVIN FRED ALLEN

AND
INDIVIDUALLY AS THE SURVIVING 

SPOUSE,
AND MICHAEL ALLEN AND CORY

ALLEN,
INTERVENORS

 

                                                   V.

 

UNITED OF OMAHA LIFE INSURANCE COMPANY,                     APPELLEES

THOMAS
PACE, STEVEN ANDERSON, ALAN 

CURRY,
WORLDWIDE RESOURCES, INCORPORATED, 

RICHARD
R. MURPHEY, JR., AND CREDITWATCH 

SERVICES,
LTD., AS SUCCESSOR IN INTEREST 

TO
CREDITWATCH SERVICES, LLC

 

                                                 AND

 

UNITED OF OMAHA LIFE INSURANCE COMPANY                      APPELLANT

 

                                                   V.

 

CREDITWATCH SERVICES, LTD., AS SUCCESSOR                      APPELLEE

IN
INTEREST TO CREDITWATCH SERVICES, LLC

 

                                              ------------

 

               FROM
PROBATE COURT NO. 2 OF TARRANT COUNTY

 

                                              ------------

 

                                             OPINION

 








                                              ------------

This is a dispute over the
proceeds of a key man life insurance policy. 
The principal question before us is this:  When a policy=s named beneficiary merges with another entity, and the other entity
is the Asurviving company,@  are the policy proceeds
payable to the surviving company?  We
answer in the affirmative, and we affirm the trial court=s judgment.

I.      Background

Appellant Judy Allen is the
widow of Marvin Fred Allen, and Appellants Michael Allen and Cory Allen are his
sons.  In 2001, Fred was the CEO of
CreditWatch Services, L.P. and the president of CreditWatch Services, L.P.=s general partner, Stoneleigh Financial L.L.C.  CreditWatch Services, L.P. purchased a Akey man@ life
insurance policy on Fred=s life in
the amount of $1 million from United of Omaha Life Insurance Company (AUnited@).  Fred signed the application in his individual
capacity as the proposed insured, and he signed it in his capacity as president
of Stoneleigh as the policy=s applicant/owner.  In the
application, he designated CreditWatch Services, L.P. as the policy=s sole beneficiary. 








In June 2002, CreditWatch
Services, L.P. merged with CreditWatch Services, Ltd., an Ohio limited
company.  The merger agreement and
certificate of merger specified that the surviving entity was CreditWatch
Services, Ltd.  CreditWatch Services,
Ltd. later changed its name to CreditWatch Services LLC. The insurance policy=s beneficiary designation was never changed from CreditWatch Services,
L.P. 

Fred died of natural causes
on December 25, 2002.  In September 2003,
United issued a check payable to ACreditWatch Services@ for the policy proceeds.  CreditWatch Services LLC deposited the check
into one of its accounts. 

In December 2004, Judy Allen
sued United; Thomas Pace, the insurance agent who sold the policy; Steven
Anderson, the CEO of CreditWatch Services LLC; 
Richard Murphey, CreditWatch Services LLC=s attorney; Worldwide Resources, Inc., a firm that investigated Fred=s death for United; and Alan Curry, an employee of Worldwide.[1]  Judy sued United for paying the policy
proceeds to ACreditWatch
Services,@ Pace for
negligence, and all of the defendants for tortious interference with an
inheritance and conspiracy to commit fraud. 
Michael and Cory later intervened in the lawsuit as plaintiffs. 








All defendants moved for
summary judgment, and the trial court ultimately granted summary judgment on
all causes of action.[2]  Judy, Michael, and Cory (AAppellants@) filed this
appeal.  In ten issues, they complain
that the trial court erred by granting summary judgment because the policy=s named beneficiary ceased to exist before Fred died and because the
named beneficiary had no insurable interest in Fred=s life (issues 1, 2, and 3); the trial court abused its discretion by
striking Judy=s summary
judgment affidavit without allowing her an opportunity to correct any
deficiencies in the affidavit (issues 4, 5, and 6); the trial court abused its
discretion by overruling Judy=s motion to compel discovery from Anderson, Murphey, Pace, and United
(issue 7); the trial court abused its discretion by denying Judy=s motion for continuance (issue 8); the trial court abused its
discretion by denying Judy=s motion for a discovery control plan (issue 9); and the trial court
erred by denying Judy=s motion to
disqualify counsel for Havens and Anderson (issue 10).

II.     Discussion

A.     Summary Judgment








In their first three issues,
Appellants argue that the trial court erred by granting summary judgment in
favor of Appellees.  Appellants contend
that United should have paid the insurance proceeds to Fred=s estate because the policy=s designated beneficiary, CreditWatch Services, L.P., ceased to exist
after its merger with CreditWatch Services, Ltd. and because CreditWatch
Services, Ltd. had no insurable interest in Fred=s life at the time of his death.

1.     Standard of Review

A defendant who conclusively
negates at least one essential element of a cause of action is entitled to
summary judgment on that claim.  IHS
Cedars Treatment Ctr. of Desoto, Tex., Inc. v. Mason, 143 S.W.3d
794, 798 (Tex. 2004); see Tex. R.
Civ. P. 166a(b), (c).  When
reviewing a summary judgment, we take as true all evidence favorable to the
nonmovant, and we indulge every reasonable inference and resolve any doubts in
the nonmovant=s
favor.  IHS Cedars Treatment Ctr.,
143 S.W.3d at 798. 

2.     Effect of Merger on
Beneficiary Designation








In their second issue,
Appellants argue that after CreditWatch Services, L.P. merged with CreditWatch
Services, Ltd., CreditWatch Services, L.P. ceased to exist.  CreditWatch Services, L.P. was the policy=s designated beneficiary, and the designation was never changed.  Appellants contend that because the policy=s designated beneficiary did not exist when Fred died, United should
have paid the policy proceeds to Fred=s estate.  Appellees argue that
CreditWatch Services, L.P.=s rights as beneficiary were transferred to CreditWatch Services, Ltd.
as a result of the merger, and no change in the beneficiary designation was
required.

Some Texas cases describe a
beneficiary=s right to
receive life insurance proceeds payable at a future but uncertain date as Aproperty@ in the
nature of an unmatured chose in action[3]
that matures at the death of the insured. 
See Brown v. Lee, 371 S.W.2d 694, 696 (Tex. 1963); Seaman v.
Seaman, 686 S.W.2d 206, 211 (Tex. App.CHouston [1st Dist.] 1984, writ ref=d n.r.e.); Prudential Life Ins. Co. v. Burke, 614 S.W.2d 847,
849 (Tex. Civ. App.CTexarkana), writ
ref=d n.r.e., 621 S.W.2d 596 (Tex. 1981). 
Other cases describe the beneficiary=s interest as an expectancy that matures into a vested interest upon
the death of the insured.  See Hunt v.
Jefferson-Pilot Life Ins. Co., 900 S.W.2d 453, 456 (Tex. App.CFort Worth 1995, writ denied); see also Garabrant v. Burns, 130
Tex. 518, 111 S.W.2d 1100, 1103 (1938).








Both choses in action and
expectancies are conveyable interests under Texas law.  See PPG Indus., Inc. v. JMB/Houston
Ctrs. Partners Ltd. P=ship,  146 S.W.3d 79, 106 (Tex. 2004) (tracing
development of modern law allowing transfer of choses in action); Parker v.
Blackmon, 553 S.W.2d 623, 624 (Tex. 1977) (A[T]he effective conveyance of . . . an expectant interest is clearly
permissible.@).  Thus, regardless of whether we characterize
CreditWatch Services, L.P.=s interest in Fred=s life insurance policy as a chose in action or an expectancy, the
interest was transferable, and the question is whether the merger effectively
transferred that interest to CreditWatch Services, Ltd.

Under the merger agreement
between CreditWatch Services, L.P. and CreditWatch Services, Ltd., CreditWatch
Services, L.P. was merged into CreditWatch Services, Ltd., and CreditWatch
Services, Ltd. was the surviving company. 
The merger agreement stated that the merger was being completed under ' 1705.36 of the Ohio Revised Code and article 6132a, ' 2.11 of the Texas Limited Partnership Act.  The agreement provided as follows:

Effect
of Merger.  Upon the
Effective Date, the separate existence of the Merging Partnership shall cease,
and the Merging Partnership shall be merged into the Surviving Company in
accordance with this agreement, and the Surviving Company shall continue
unaffected and unimpaired by the merger, with all of the rights,
privileges, immunities, powers and purposes, and all of the property, real
and personal, causes of action and every other asset of the Merging Partnership,
and shall assume and be liable for all of the liabilities, obligations and
penalties of the Merging Partnership, all in accordance with section 1705.39 of
the Ohio Revised Code and article 6132a, section 2.11 of the Texas Revised
Limited Partnership Act. [Emphasis added.] 

 

The language of the merger
agreement was entirely consistent with Texas and Ohio law regarding mergers.  The Texas Limited Partnership Act provides
that when a merger occurs,








all
rights, title, and interests to all real estate and property owned by each
domestic or foreign limited partnership and by each other entity that is a
party to the merger shall be allocated to and vested in one or more of the
surviving or resulting entities as provided in the plan of merger without
revision or impairment, without further act or deed, and without any
transfer or assignment having occurred, but subject to any existing liens
or other encumbrances thereon; . . . .

 

Tex. Rev. Civ. Stat.
Ann. art. 6132a-1, ' 2.11(g)(2) (Vernon Supp. 2006) (emphasis added).  Similarly, the Ohio Revised Code provides:

The
surviving or new entity possesses all assets and property of every description,
and every interest in the assets and property, wherever located, and the rights
. . . of each constituent entity . . . all of which are
vested in the surviving or new entity without further act or deed.

 

Ohio Rev. Code Ann. '
1701.82(A)(3) (West 2007) (emphasis added); see also  TXO Production Co. v. M.D. Mark, Inc., 999
S.W.2d 137, 142 (Tex. App.CHouston [14th Dist.] 1999, pet. denied) (noting that Texas and Ohio
merger statutes are worded essentially the same and automatically vest all
interests of the merging entity in the surviving entity).








Thus, under the express terms
of the merger agreement, as well as under the relevant Texas and Ohio statutes,
all of CreditWatch Services, L.P.=s rights and interests automatically vested in CreditWatch Services,
Ltd. without the need for further act or deed.  Because CreditWatch Services, L.P.=s rights as beneficiary of Fred=s life insurance policyCwhether we characterize those rights as an unmatured chose in action
or an expectancy interestCwere
transferable, those rights, too, vested in CreditWatch Services, Ltd. without
the need for further act or deed.

Appellants argue that
CreditWatch Services, L.P. could not convey its rights as the policy=s beneficiary to CreditWatch Services, Ltd. because CreditWatch
Services, L.P. was merged out of existence and its rights as beneficiary were
merged out of existence, too.  Appellants
analogize CreditWatch Services, L.P. to a natural person who is the beneficiary
of a life insurance policy but who dies before the death of the insured life,
thus extinguishing the natural person=s rights as beneficiary.

Appellants= analogy fails because merger is not the corporate equivalent of
natural death.  One court has described
merger in the following eloquent terms:

[T]he consolidation of two or
more corporations is like the uniting of two or more rivers, neither stream is
annihilated, but all continue in existence. 
A new river is formed, but it is a river composed of the old rivers,
which still exist, though in a different form. 
So it is with a consolidated corporation.








Atlanta Newspapers, Inc. v. Doyal, 65 S.E.2d 432, 437 (Ga. App. 1951) (quoting Atlantic &
Birmingham Ry. Co. v. Johnson, 56 S.E. 482, 484 (Ga. 1907)).  This poetical description is entirely
consistent with both the Texas and Ohio merger statutes, which provide that all
rights and obligations of the merging entity continue to exist in the surviving
entity.  See Tex. Rev. Civ. Stat. Ann. art. 6132a-1,
' 2.11(g)(2); Ohio Rev. Code
Ann. '
1701.82(A)(3).  Article 6132a-1 also
provides that Awhen a
merger takes effect . . . the separate existence of every domestic
limited partnership that is a party to the merger, except any surviving or new
domestic limited partnership, shall cease.@  Tex. Rev. Civ. Stat. Ann. art. 6132a-1, ' 2.11(g)(1) (emphasis added). 
While CreditWatch Services, L.P.=s separate existence ceased at the time of the merger, all of its
rights and obligations lived on in CreditWatch Services, Ltd.  See Bailey v. Vanscot Concrete Co.,
894 S.W.2d 757, 759 (Tex. 1995) (AIn a merger, the privileges, powers, rights, and duties of the
corporation are transferred to the surviving corporation and are there
continued and preserved.@)

 We hold that CreditWatch Services, L.P.=s rights as the life insurance policy=s beneficiary vested in CreditWatch Services, Ltd. when the two
entities merged.  We therefore overrule
Appellants= second
issue.

3.     Insurable Interest

In their third issue,
Appellants argue that CreditWatch Services, Ltd. had no insurable interest in
Fred=s life at the time of his death because he was no longer employed by
or associated with CreditWatch Services, L.P. or its successors.  We disagree.








Under the common law, the
designated beneficiary of a life insurance policy must have an insurable
interest in the insured=s life when
the policy is issued and when the insured dies. 
Torrez v. Winn-Dixie Stores, Inc., 118 S.W.3d 817, 820 (Tex. App.CFort Worth 2003, pet. dism=d).  Two policies drive this
rule:  A practice that encourages one to
take another=s life
should be prohibited, and no one should be permitted to wager on the life of
another.  Id.








While the insurable-interest
rule is still followed by Texas courts, the Texas legislature has enlarged the
class of persons deemed to have an insurable interest.  Stillwagoner v. Travelers Ins. Co.,
979 S.W.2d 354, 358-59 (Tex. 1998). 
Under the Texas Insurance Code, an individual may apply for a life
insurance policy and designate as beneficiary any individual,
partnership, association, or corporation. 
Tex. Ins. Code Ann. ' 1103.054 (Vernon Supp. 2006). 
An individual may also consent in writing to the purchase of a policy on
his life by a third person and to the designation of any individual,
partnership, association, or corporation as beneficiary.  Id. ' 1103.056.  Thus, the
legislature has conferred an insurable interest on those persons named by an
insured as beneficiaries in a policy on his own life and on those named by a
person to whom the insured has granted the power to make such a
designation.  See Stillwagoner,
979 S.W.2d at 358.  A beneficiary who is
designated in accordance with sections 1103.054 or 1103.056 has, at all times
after the designation, an insurable interest in the life of the individual who
is insured under the policy.  Tex. Ins. Code Ann. ' 1103.053 (Vernon Supp. 2006).

In this case, Fred himself
signed the insurance application, once individually as the proposed insured,
and again as president of the applicant/owner, and he designated CreditWatch
Services, L.P. as the sole beneficiary. 
Thus, Fred designated CreditWatch Services, L.P. as the beneficiary in
accordance with insurance code sections 1103.054 and 1103.056, and CreditWatch
Services, L.P. had an insurable interest in his life at all times thereafter
under section 1103.053.








Appellants cite insurance
code section 1103.004 for the proposition that a partnership has an insurable
interest only in the life of a member of the partnership and argue that because
Fred was not a member of CreditWatch Services, L.P., CreditWatch Services, L.P.
had no insurable interest in his life. 
Section 1103.004 provides that A[a] partnership or a member of the partnership may be designated as a
beneficiary in a policy that insures the life of a member of the partnership.@  Id.  ' 1103.004.  That section appears
under Chapter 1103, Subchapter A, titled AStatutory Life Insurance Beneficiaries; Insurable Interest.@  Subchapter A confers insurable
interests on several types of organizations in the lives of their officers,
stockholders, and members.  Id. '' 1103.003 (conferring insurable interest to corporations in the lives
of their officers and stockholders); 1103.004 (conferring insurable interest to
partnerships in the lives of their members). 
Sections 1103.053 through 1103.056, on the other hand, appear under Subchapter
B, titled ADesignation
of Beneficiary or Owner of Life Insurance Policy; Insurable Interest.@

Simply put, subchapter A
creates one method of conferring an insurable interest, and subchapter B
creates another.  Subchapter A confers
insurable interests to entities in the lives of their officers, stockholders, and
members without the consent of the insured life, while Subchapter B
confers an insurable interest on any person designated as a beneficiary by
the insured life.  Sections
1103.054 and 1103.056 allow a person to designate Aany individual, partnership,
association, or corporation@ as beneficiary of a life insurance policy, and nothing in the code
suggests that section 1103.004 limits Aany . . . partnership@ to partnerships of which the insured life is a member.








Appellants also argue that,
despite the enactment of sections 1103.054 and 1103.056, Texas courts have
consistently held that a beneficiary must have an insurable interest in the
insured life.  We agree, and we do not
hold otherwise today.  As the supreme
court noted in Stillwagoner, Texas law requires an insurable interest,
but the legislature has enlarged the class of persons considered to have an
insurable interest.  See Stillwagoner,
979 S.W.2d at 358-59.  Insurance code
sections 1103.054 and 1103.056 enlarged the class of persons considered to have
an insurable interest to include any partnership designated as a beneficiary by
the insured or by a person to whom the insured gave the power to make such a
designation.  In this case, Fred, the
insured, designated CreditWatch Services, L.P. as the sole beneficiary; thus,
CreditWatch Services, L.P. had an insurable interest in his life when he executed
the beneficiary designation and, under section 1103.053, at all times
thereafter.

We hold that as a matter of
law, CreditWatch Services, L.P. had an insurable interest in Fred=s life, and we overrule Appellants= third issue.  Having overruled
Appellants= second and
third issues, we also overrule their first issue, in which they complain
generally that the trial court erred by granting summary judgment.

B.     Judy Allen=s Affidavit








In her fourth, fifth, and
sixth issues,[4]
Judy argues that the trial court abused its discretion by sustaining Appellees= objections to her summary judgment affidavit and striking the
affidavit without giving her an opportunity to correct any deficiencies in it.  Judy contends that Appellees= objections were untimely, parts of the affidavit were
unobjectionable, and the trial court should have allowed her to cure the
deficiencies objected to by Appellees.

Judy=s affidavit states that A[t]his affidavit is given regarding the status of Fred=s employment at the date of his death on December 25, 2002,@ and most of the affidavit relates to Fred=s relationship to the various CreditWatch  entities. 
In her response to Appellees= motions for summary judgment, Judy referred to her affidavit twice,
both times to support the assertion that Fred was not an employee of and did
not have any financial interest in CreditWatch Services, L.P. or its successors
or assigns at the time of his death, as a part of her attempt to show that
CreditWatch Services, L.P. had no insurable interest in Fred=s life.  Appellants carry
forward the same reference to Judy=s affidavit, for the same purpose, in their brief in this court. 

Appellee Anderson filed
written objections to Judy=s affidavit on February 21, 2004Cthe day before the hearing on Appellees= motions for summary judgment. 
Appellees Pace and United adopted Anderson=s objections in writing on February 22, and the other Appellees orally
adopted Anderson=s objections
at the summary judgment hearing.  The
trial court sustained the objections and struck Judy=s affidavit in its entirety. 








To obtain reversal of a
judgment based upon an error in the trial court, the appellant must show that
the error probably caused rendition of an improper judgment or probably
prevented the appellant from properly presenting the case to this court.  TEX. R. APP. P. 44.1(a); Romero v. KPH Consolidation, Inc., 166
S.W.3d 212, 220 (Tex. 2005).  We will not
reverse a trial court=s judgment
because of an erroneous evidentiary ruling unless the ruling probably caused
the rendition of an improper judgment.  Horizon/CMS
Healthcare Corp. v. Auld, 34 S.W.3d 887, 906 (Tex. 2000); Owens-Corning
Fiberglas Corp. v. Malone, 972 S.W.2d 35, 43 (Tex. 1998).  The complaining party must usually show that
the whole case turned on the evidence at issue. 
City of Brownsville v. Alvarado, 897 S.W.2d 750, 753-54 (Tex.
1995).  We examine the entire record in
making this determination of harm.  Interstate
Northborough P=ship v.
State, 66 S.W.3d 213, 220 (Tex. 2001).








The gist of Judy=s affidavit, and the only purpose for which she cited it in her
summary judgment response, is that Fred did not have a relationship with any
CreditWatch entity at the time of his death and, therefore, that no CreditWatch
entity had an insurable interest in his life. 
We have already held as a matter of law that CreditWatch Services, L.P.
acquired an insurable interest in Fred=s life when he designated the partnership as beneficiary of the life
insurance policy and at all times thereafter. 
Therefore, Fred=s
relationship to the CreditWatch entities at the time of his death is wholly
irrelevant to the insurable-interest question, and Judy=s testimony about his relationship is likewise irrelevant.  In no sense did the whole case turn on Judy=s excluded testimony.

Thus, even assuming that the
trial court abused its discretion by sustaining the objections, striking the
affidavit in its entirety, and not giving Judy an opportunity to correct the
affidavit=s
deficiencies, the error was harmless.  We
overrule Appellants= fourth,
fifth, and sixth issues.

C.     Motion to Compel

In her seventh issue, Judy
argues that the trial court abused its discretion by denying her motion to
compel responses from Appellees United, Pace, Murphey, and Anderson to her
discovery requests.  We review a trial
court=s discovery orders under the abuse of discretion standard.  TransAmerican Natural Gas Corp. v. Powell,
811 S.W.2d 913, 917 (Tex. 1991). 








In her brief, Judy contends
that Appellees waived their claims of privilege to various discovery requests
by failing to produce privilege logs as required by rule 193.3.  See Tex.
R. Civ. P. 193.3(b).  She also
states that A[i]n an
attempt at brevity, [she] will not go into lengthy detail as to every other
discovery error committed by the trial court, but will refer this Court to her
motion, proof and arguments on pages 686-704 . . . of the clerk=s record and the [156 pages of] exhibits attached thereto.@  A claim of error on appeal
must be argued in the party=s brief; it is insufficient simply to refer the appellate court to the
party=s trial court arguments.  Guerrero
v. Tarrant County Mortician Servs. Co., 977 S.W.2d 829, 832‑33 (Tex.
App.CFort Worth 1998, pet. denied) (AWere we to approve of this tactic, appellate briefs would be reduced
to a simple appellate record reference to a party=s trial court arguments. 
Additionally, this would be an open door for parties to circumvent the
appellate brief page limitations.@).  Therefore, we will consider
only the specific argument raised in Judy=s brief.

We have reviewed the relevant
discovery requests and responses, paying particular attention to those
responses where Appellees asserted privileges. Whenever Appellees asserted a
privilege to a discovery request, they also asserted other objections, such as
objections that the request was vague, ambiguous, overbroad, unduly burdensome,
and not reasonably calculated to lead to the discovery of admissible evidence. 

Even assuming that Appellees
waived their claims of privilege by failing to produce privilege logs under
rule 193.3(b), we cannot say that the trial court abused its discretion by
denying Judy=s motion to
compel because her brief on appeal does not address the other objections posed
by Appellees.  Therefore, we overrule her
seventh issue.








D.     Motion for Continuance and
Motion for Discovery Control Plan

In her eighth issue, Judy
argues that the trial court erred by denying her motion for continuance of the
summary judgment hearing.[5]  She contends that she did not have adequate
time for discovery before the summary judgment hearing as required by rule
166a(i).  Whether the trial court grants
or denies a motion for continuance is within its sound discretion.  See BMC Software Belg., N.V. v. Marchand,
83 S.W.3d 789, 800 (Tex. 2002).  

We first note that Judy=s citation to rule 166a(i) is inapposite.  Appellees filed traditional motions for
summary judgment under rule 166a(c), not no-evidence motions under rule
166a(i).  Thus, rule 166a(i) and its Aadequate time for discovery@ provision do not apply.








Second, Judy argues that
adequate time for discovery had not yet occurred because of Appellees= dilatory discovery tactics, but she does not explain how Appellees
abused the discovery process or identify what information relevant to the
summary judgment issues Appellees withheld. 
The mere accusation that a party abused the discovery process is not
sufficient to justify overturning the trial court=s ruling on a motion to continue a summary judgment hearing.  Specialty Retailers, Inc. v. Fuqua, 29
S.W.3d 140, 146 (Tex. App.CHouston [14 Dist.] 2000, pet. denied).

We now turn to the procedural
time line leading up to the summary judgment hearing.  Judy filed suit on December 17, 2004.  The trial court heard Appellees= motions for summary judgment on February 22, 2006, over a year
later.  In her original and subsequent
petitions, Judy stated that discovery would be conducted under a level 3
discovery control plan.  But A[t]he initial pleading required by Rule 190.1 is merely to notify the
court and other parties of the plaintiff=s intention; it does not determine the applicable discovery level or
bind the court or other parties.@  Tex. R. Civ. P. 190 cmt. 1. 
Thus, despite pleading an intention to proceed under level 3, a case can
be designated level 3 only by court order. 
Id.  When the trial court
does not sign an order adopting a level 3 discovery control plan, the default
discovery limitations of levels 1 or 2 apply. 
Tex. R. Civ. P.
190.4(b).  The discovery period under
level 2 ends nine months after the earlier of the date of the first oral
deposition or the due date of the first response to written discovery.  Tex.
R. Civ. P. 190.3(b)(1)(B)(ii).








Judy did not  move the court to enter a discovery control
order until after Appellees filed their motions for summary judgment, and the
trial court denied her motion. 
Therefore, the case was subject to the default level 2 discovery control
deadlines, and the discovery period ended nine months after the due date of the
first written discovery response. 

The first discovery response
was due in this case on February 11, 2005. Thus, the default level 2 discovery
period ended on November 11, 2005Ca week before United filed the first summary judgment motion and three
months before the summary judgment hearing. 
In the affidavit filed in support of Judy=s motion for continuance, her attorney cited the need for deposition
testimony as a justification for a continuance, but it does not appear that
Judy requested any depositions in the fourteen months between the date she
filed suit and the summary judgment hearing. 
Under these circumstances, we cannot say that the trial court abused its
discretion by denying Judy=s motion for continuance, and we overrule her eighth issue.








In her ninth issue, Judy
argues that the trial court erred by denying her motion to enter a level 3
discovery control plan.  The rule
addressing level 3 discovery control plans states that A[t]he court must, on a party=s motion, . . . order that discovery be conducted
in accordance with a discovery control plan tailored to the circumstances of
the specific suit.@  Tex.
R. Civ. P. 190.4(a) (emphasis added). 
While the rule states that the court Amust@ enter a
level 3 scheduling order on a party=s motion, it does not require that the order provide deadlines
different from those under a level 2 case; even under a level 3 scheduling
order, the level 2 deadlines continue to apply Aunless specifically changed in the discovery control plan ordered by
the court.@  Tex. R.
Civ. P. 190.4(b).  That decision
is left to the trial court=s discretion: AThe
discovery control plan ordered by the court . . . may change any
limitation on the time for . . . discovery set forth in these rules.@  Id. (emphasis added).

Because the rules give the
trial court discretion under a level 3 order to determine what deadlines to
apply and because we have already determined that the trial court did not abuse
its discretion by denying Judy=s motion for continuance to conduct more discovery, we conclude that
the trial court did not abuse its discretion by granting the motions for
summary judgment without first entering a level 3 discovery control order.  See Branum v. Nw. Tex. Healthcare Sys.,
Inc., 134 S.W.3d 340, 341 (Tex. App.CAmarillo 2003, pet. denied) (holding trial court did not abuse
discretion by granting summary judgment before entering level 3 discovery
control order); Baize v. Scott & White Clinic, No. 03‑05‑00780‑CV,
2007 WL 135956, at *9 (Tex. App.CAustin January 22, 2007, pet. denied) (same).  We overrule Judy=s ninth issue.

E.     Disqualification of
Counsel








In her tenth and final issue,
Judy argues that the trial court erred by denying her motion to recuse the
Jackson Walker law firm from representing defendants Anderson, Havens, and
CreditWatch Services, Ltd. because a former Jackson Walker partner, Richard
Goodner, counseled Fred in the formation of various entities, including
CreditWatch Services, L.P.  We review a
trial court=s ruling on
a motion to disqualify for an abuse of discretion.  Metro. Life Ins. Co. v. Syntek Fin. Corp.,
881 S.W.2d 319, 321 (Tex. 1994).

As she did in her seventh
issue, Judy attempts to incorporate by reference the arguments presented in her
trial court motion.  For the reasons we
stated in our discussion of her seventh issue, we will consider only the
specific arguments made in her appellate brief.

Judy sought to disqualify
Jackson Walker under disciplinary rules 1.09 and 3.08.  Rule 1.09 provides that a lawyer shall not
take a representation that is adverse to a former client if the new matter Ais the same or a substantially related matter.@  Tex.
Disciplinary R. Prof=l. Conduct 1.09(a)(3),
reprinted in Tex. Gov=t Code Ann., tit. 2, subtit. G. (Vernon
Supp. 2006) (State Bar R. art. X,
' 9).  Rule 3.08 provides that a
lawyer shall not continue or accept employment as an advocate before the
tribunal if the lawyer knows or believes that the lawyer is or may be a witness
necessary to establish an essential fact on behalf of the lawyer=s client.  Id. 3.08(a).








Judy argues that Jackson Walker
had a conflict of interest by representing clients adverse to the entities
Goodner helped Fred to create.  But Judy
does not explain how the clients Jackson Walker represented in this caseCAnderson, Havens, and CreditWatch Services, Ltd.Cwere adverse to CreditWatch Services, L.P.  Indeed, it appears that while those clients
were adverse to Judy, they were aligned with CreditWatch Services, L.P,
especially because CreditWatch Services, Ltd. contended that it was entitled to
the insurance proceeds as survivor of the CreditWatch merger and successor to
CreditWatch Services, L.P.  Nor does Judy
explain how Jackson Walker violated rule 3.08.

We therefore hold that the
trial court did not abuse its discretion by denying Judy=s motion to disqualify Jackson Walker, and we overrule her tenth
issue.

III.     Conclusion

We do not reach United=s cross-issues against CreditWatch Services, Ltd., which were
contingent upon the reversal of the trial court=s summary judgments.  Having
overruled all of Appellants= issues, we affirm the trial court=s judgment.  We deny Worldwide=s AMotion for
Damages for Frivolous Appeal.@

 

ANNE GARDNER

JUSTICE

 

PANEL B:   HOLMAN, GARDNER, and WALKER, JJ.

 

DELIVERED:
May 17, 2007   











[1]Judy
also sued John F. Havens and the City of Arlington.  The trial court granted Havens=s
special appearance, see Allen v. Havens, No. 02-05-00318-CV, 2007
WL 805477, at *1 (Tex. App.CFort Worth March 15, 2007, no
pet. h.), and granted Arlington=s plea to the jurisdiction. 





[2]Except
for Appellants=
claim for quantum meruit against CreditWatch Services, Ltd., which was severed
into a new cause number.   





[3]A
chose in action is a right to bring an action to recover a debt, money, or
thing.  Black=s Law Dictionary (8th ed. 2004)





[4]The
fourth through tenth issues pertain only to Appellant Judy Allen. 





[5]This
issue does not pertain to Appellees Worldwide and CreditWatch Services, Ltd.,
both of which filed their motions for summary judgment after the date of the
hearing related to Judy=s
motion for continuance.