# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-09-00053-CV

**AnnaMarie Sherbin, Appellant**

**v.**

**Dean Word Company, Ltd., Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 22ND JUDICIAL DISTRICT
### NO. C2003-0058A, HONORABLE CHARLES R. RAMSAY, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

AnnaMarie Sherbin was a passenger in a van involved in a multiple-vehicle collision on Interstate Highway 35 ("I-35") in New Braunfels. Sherbin sued the Dean Word Company ("Dean Word"), which was engaged in a construction project near the scene of the accident, for injuries she sustained. Sherbin claimed that Dean Word had negligently created a dust cloud, which obscured visibility on the highway and proximately caused the accident. After a jury trial, the jury found for Dean Word. In five issues on appeal, Sherbin argues that (1) there is factually insufficient evidence to support the jury's finding that the accident was not proximately caused by Dean Word's negligence, (2) the trial court erred in excluding eyewitness testimony of one of Sherbin's experts, (3) the trial court erred in excluding written witness statements attached to the accident report prepared by the police, (4) the court erred in excluding Sherbin's testimony about comments that construction workers had made to her about the accident, and (5) the court erred in excluding the

testimony of another witness concerning comments made by construction workers after the accident. We affirm the judgment of the trial court.

**BACKGROUND**

In January 2003, Dean Word was performing a road construction project along a three-mile stretch of I-35 in New Braunfels, Texas.[1] On January 21, 2003, Dean Word applied lime to a subgrade that was being built in order to widen the highway. Donald Peters, Dean Word's director of safety at the time, and Ray Foyt, who was working for Dean Word on the project, testified that pelletized lime, instead of powdered lime, was used on the subgrade. Peters testified that Dean Word had been using pelletized lime for several years prior to the accident, as powdered lime is "notorious" for causing dust clouds, while pelletized lime remains in capsule form until hydrated.[2]

Foyt testified that, on the day in question, pelletized lime had been dumped onto the ground and spread into the soil, and that the process of hydrating the lime had begun. When pelletized lime is hydrated, it sometimes produces vapor trails—as described by Foyt, the lime would give off "steam like out of your tea kettle." Peters testified that he had never seen vapor trails form a cloud or rise more than two to three feet off of the ground, and noted that the subgrade work was being done roughly ten feet below the level of the highway.

---

[1] The facts recited herein are taken from the testimony and exhibits admitted at trial.

[2] Pelletized lime is known a Type C lime, while powdered lime is known as Type A lime. In its interrogatory responses, Dean Word stated that "pelletized Type A lime" had been used on the day of the accident. According to Peters, this response was mistaken; as Type A lime is, by definition, powdered, there is no such thing as "pelletized Type A lime." While there was testimony at trial concerning possible use of powdered lime at the site several months after the accident, the bills of lading for lime delivery on the morning of the accident indicated that Type C—pelletized—lime had been delivered to the construction site.

That same day, Sherbin was traveling on I-35 near the construction site. Sherbin, a deputy sheriff for Dallas County, was riding in a van transporting prisoners. According to Sherbin and several other eyewitnesses, a white cloud suddenly enveloped the cars on I-35 near the work site, severely reducing visibility. An accident involving more than 20 cars, including the van in which Sherbin was a passenger, ensued. While driving conditions had been foggy earlier in the day, some witnesses stated that the fog had lifted by the time the accident occurred, while others indicated that visibility was affected by fog through the time of the accident.

Officer Chris Pelletier of the New Braunfels Police Department arrived 45 minutes after the accident to investigate. He prepared an accident report in which he concluded, based on his investigation of the scene and discussions with other officers, that the cause of the accident was a "zero visibility cloud." He added that Dean Word "was spreading lime on the site and contributed to this accident." Other witnesses attributed the creation of the dust cloud to the operation of a cement mixer. Both Sherbin and Bill Cobb, a passenger in one of the vehicles involved in the accident, stated that a cement mixer on the construction site created a large amount of white smoke that drifted onto the highway. Peters and Foyt testified that, to their knowledge, there was no cement mixer on the construction site on the day of the accident.

Sherbin brought suit against Dean Word, claiming that she had suffered injuries due to the accident, and that the accident had been proximately caused by Dean Word's negligence. At trial, David Steitle, one of Sherbin's expert witnesses, opined that the accident had been caused by Dean Word "kicking up lime." He also stated that he had personally witnessed the formation of the dust cloud that in his opinion caused the accident. While he agreed that hydrating lime would not

cause a dust cloud, he stated that pelletized lime is only guaranteed not to form a dust cloud when it is spread, and that contractors must be careful that it does not form a dust cloud afterwards. Steitle admitted that he did not take weather data into consideration when forming his opinion, despite the fact that several witnesses stated that the day had been foggy. Dean Word's expert, Arthur Barrow, stated that there was no way that the process of applying pelletized lime could foreseeably create a dust cloud, and concluded that the cloud had formed due to a weather phenomenon.

At the conclusion of the jury trial, the jury found in favor of Dean Word, and this appeal followed.

**STANDARD OF REVIEW**

When a party attacks the factual sufficiency of an adverse finding on an issue on which she has the burden of proof, she must demonstrate on appeal that the adverse finding is against the great weight and preponderance of the evidence. *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001). The court of appeals must consider and weigh all of the evidence, and can set aside a verdict only if the evidence is so weak or if the finding is so against the great weight and preponderance of the evidence that it is clearly wrong and unjust. *Id.*

Rulings on the admission or exclusion of evidence are committed to the trial court's sound discretion. *City of Brownsville v. Alvarado*, 897 S.W.2d 750, 753 (Tex. 1995); *Beck v. Law Offices of Edwin J. Terry, Jr., P.C.*, 284 S.W.3d 416, 442 (Tex. App.—Austin 2009, no pet.). A trial court abuses its discretion in admitting or excluding evidence if it acts without reference to any guiding rules and principles or if the act complained of is arbitrary and unreasonable. *Carpenter v. Cimarron Hydrocarbons Corp.*, 98 S.W.3d 682, 687 (Tex. 2002). We must uphold a trial court's

4

evidentiary ruling if there is any legitimate basis in the record to support it. *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998).

## DISCUSSION

### *Factual Sufficiency of the Evidence*

In her first issue, Sherbin argues that the jury's finding that the accident was not proximately caused by Dean Word's negligence is against the great weight and preponderance of the evidence, and therefore is supported by factually insufficient evidence. Question number one submitted to the jury reads, "Did the negligence, if any, of Dean Word Company Ltd. proximately cause the occurrence in question?" The jury was given the following definitions:

> "NEGLIGENCE" means failure to use ordinary care, that is, failing to do that which a person of ordinary prudence would have done under the same or similar circumstances or doing that which a person of ordinary prudence would not have done under the same or similar circumstances.

> "PROXIMATE CAUSE" means that cause which, in a natural and continuous sequence, produces an event, and without which cause such event would not have occurred. In order to be proximate cause, the act or omission complained of must be such that a person using ordinary care would have foreseen that the event, or some similar event, might reasonably result therefrom. There may be more than one proximate cause of an event.

In determining whether the jury's finding was against the great weight and preponderance of the evidence, we evaluate the evidence presented at trial in light of these definitions. *See City of Fort Worth v. Zimlich*, 29 S.W.3d 62, 71 (Tex. 2000) (holding that where, as here, parties did not object to charge, appellate court is bound to review evidence in light of definitions actually given to the jury).

5

While the witnesses at trial agreed that a cloud had formed on the highway and reduced visibility immediately prior to the accident, the creation of the cloud was a primary point of contention. Sherbin put forth two theories of how Dean Word's negligent activities at the construction site created the cloud, and in turn proximately caused the accident. Under the first theory, Dean Word created a cloud of lime dust when applying lime to the subgrade. This theory is consistent with Dean Word's interrogatory response that the source of the "dust cloud" was "Pelletized Type A lime" and with Pelletier's accident report, which states that Dean Word "was spreading lime on the site and contributed to this accident." Pelletier admitted, however, that he did not witness the accident, and based his opinion largely on his discussions with other peace officers. Further, he stated that "spreading lime" was a general description, not a statement of causation. Steitle, Sherbin's expert, testified that a cloud of lime dust enveloped the highway prior to the accident, though he could not say exactly how the cloud had been formed. He allowed that the hydration of pelletized lime, which Dean Word was using at the time of the accident, would not create such a cloud, but maintained that the cloud must have been formed by Dean Word "kicking up lime."[3]

Peters, however, testified that the lime that had been used on the day in accident was pelletized lime, and stated that the application of such lime would not cause a dust cloud. Foyt also testified that he had never seen pelletized lime create a cloud or plume large enough to disrupt motorists, despite participating in hundreds of applications of pelletized lime, and further stated that

---

[3] As noted above, while Steitle testified that some of the bills of lading indicated that powdered lime might have been delivered to the site several months after the accident, there is no evidence in the record that powdered lime was being used on the day of the accident.

there was fog in the air at the time of the accident. Barrow, Dean Word's expert, agreed that application of pelletized lime could not form a dust cloud of the type described by those in the accident. He further stated that, in his opinion, the cloud had been the result of a weather phenomenon.

Under her second theory, Sherbin argues that operation of a cement mixer could have caused the cloud. Sherbin herself testified that she saw a man on the construction site mixing a powdered substance in what she described as a cement mixer. The mixer was producing smoke "like a chimney." Immediately after she saw the man, the van went into an area of "absolute white-out," and she testified that at least some of the cloud was emanating from this mixer. Cobb testified that he had seen a cement mixer sitting on the ground and spinning around that was producing large amounts of white smoke that drifted onto the highway. Foyt, however, testified that no one was using a cement mixer on the site, either to apply lime or for any other purpose, and Peters testified that he did not recall seeing a mixer on the site.

Based on our review of the evidence, we cannot conclude that the jury's finding was against the great weight and preponderance of the evidence with respect to either of the theories put forth by Sherbin. Regarding proximate cause, while there is some evidence to indicate that Dean Word caused or contributed to the dust cloud by applying lime or using a cement mixer, there is competing testimony suggesting otherwise. It is for the jury to resolve such conflicts. *See City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005) ("The jury may choose to believe one witness and disbelieve another, and we must not impose our own opinion to the contrary."). Further, Sherbin has presented scant evidence that the creation of a dust cloud was a foreseeable result of any of Dean

Word's actions on the construction site. Finally, there is little evidence in the record to show that, had Dean Word created the dust cloud, it was negligent in doing so. Accordingly, we conclude that the jury's finding that Dean Word's negligence was not the proximate cause of the accident was supported by factually sufficient evidence. Sherbin's first issue on appeal is overruled.

### Eyewitness Testimony of Expert

In her second issue on appeal, Sherbin argues that the court erred in refusing to allow Steitle, one of Sherbin's expert witnesses, to testify as a fact witness. At trial, Sherbin's counsel approached the bench and explained to the trial court that Steitle had realized that he had witnessed the cloud that caused the accident in his rear-view mirror. Sherbin's counsel explained that Steitle would not "be able to say where the source was, other than he saw in his rearview mirror what he clearly believed to be a cloud of lime dust." According to Dean Word's counsel, however, the defense had not been informed of this realization prior to trial, and discovery had not been supplemented to either designate Steitle as a fact witness or to summarize his eyewitness testimony regarding the dust cloud.

For the exclusion of evidence to constitute reversible error, the complaining party must show (1) that the trial court committed error, and (2) that the error was reasonably calculated to cause and probably did cause rendition of an improper judgment. *McCraw v. Maris*, 828 S.W.2d 756, 757 (Tex. 1992); *Beck*, 284 S.W.3d at 442; *see* Tex. R. App. P. 44.1. If the trial court erred in excluding the witness, the error is reversible if it is both controlling on a material issue and not cumulative. *See Perez v. Embree Constr. Group, Inc.*, 228 S.W.3d 875, 883 (Tex. App.—Austin 2007, pet. denied) (citing *Mentis v. Barnard*, 870 S.W.2d 14, 16 (Tex. 1994)).

8

In this case, we note that the testimony that Sherbin sought to include—that Steitle had been an eyewitness to the accident—did come into evidence. During cross-examination, Steitle stated, "I know what I saw them doing on this project. I was a witness to it, and so it's not just speculation on my part. I saw them creating an enormous dust cloud." Accordingly, there was no harm in the trial court's earlier exclusion of Steitle's testimony as a fact witness. Accordingly, Sherbin's second issue on appeal is overruled.

### Witness Statements in Accident Report

In her third issue on appeal, Sherbin argues that the court erred in excluding from evidence written witness statements attached to Pelletier's accident report. According to Sherbin, the affidavits of Vicki Smith and Kiersta Garcia had originally been attached to the accident report. Smith's affidavit stated that "one of the construction workers came up after the accident to inquire if we were OK. He then stated that he had told 'them' to stop 'grinding' because those people can't see." Garcia's affidavit stated, "After the accident construction workers came over to see if I was OK. When I told them I could not see anything they said, 'we know we told the guys to stop what they were doing up there because it was making the traffic blind.' They said they had told them this several times that because of the moisture in the air the smoke was making it where no one could see." While the trial court admitted the accident report into evidence, these affidavits were removed from the report prior to its admittance.[4]

---

[4] While Sherbin's brief on this issue also discusses the admissibility of statements that construction workers allegedly made to her, the record does not indicate that a witness statement from Sherbin was attached to the accident report. Admissibility of statements made by construction workers to Sherbin is addressed in our analysis of Sherbin's fourth and fifth issues on appeal.

The witness statements of Smith and Garcia are hearsay, *see* Tex. R. Evid. 801(d), while the statements of the construction workers constitute hearsay within hearsay, as these statements are themselves hearsay and are contained within the hearsay witness statements of Smith and Garcia. *See* Tex. R. Evid. 805; *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 139-40 (Tex. 2004). Accordingly, for the statements of the construction workers to be admissible, Sherbin must show that both the witness statements of Smith and Garcia and the construction-worker statements contained therein qualify under exceptions to the hearsay rule. *See Nissan Motor Co.*, 145 S.W.3d at 139-40 (holding that hearsay within hearsay is admissible only if each part of statement comports with exception to hearsay rule).

We begin with the witness statements of Smith and Garcia. Sherbin argues that these written statements fall within the public-records exception to hearsay, as the statements were attached to the accident report prepared by the police and admitted as a public record. *See* Tex. R. Evid. 803(8). However, Texas courts have held that witness statements in a police officer's file do not qualify under the public-records exception set forth in Rule 803(8). *See id.*; *Corrales v. Department of Family & Protective Servs.*, 155 S.W.3d 478, 486 (Tex. App.—El Paso 2004, no pet.) (holding that while police officer's factual findings in police report may qualify as public record, statements of witnesses in report would not) (citing *Kratz v. Exxon Corp.*, 890 S.W.2d 899, 905 & n.5 (Tex. App.—El Paso 1994, no writ)); *see also In re E.A.K.*, 192 S.W.3d 133, 145 (Tex. App.—Houston [14th Dist.] 2006, pet. denied) (same). Accordingly, as the statements of Smith and Garcia do not fall under the public-records hearsay exception, we conclude that the trial court did not abuse its discretion in excluding them.

Even if the statements of Smith and Garcia qualified under a hearsay exception, the statements of the construction workers do not. Sherbin argues that the statements of the construction workers were excited utterances. To be admissible as an excited utterance, a statement must be (1) a spontaneous reaction (2) to a personal observance of (3) a startling event (4) made while the declarant was still under the stress of excitement caused by the event. Tex. R. Evid. 803(2); *Volkswagen of Am., Inc. v. Ramirez*, 159 S.W.3d 897, 908 (Tex. 2004). For an exclamation to be spontaneously made while under the stress of excitement, it must occur before the declarant has the opportunity to reflect on or ponder the shocking incident. *Volkswagon of Am.*, 159 S.W.3d at 908. In other words, "[t]he circumstances must show that it was the event speaking through the person and not the person speaking about the event." *Malone v. Foster*, 956 S.W.2d 573, 580 (Tex. App.—Dallas 1997), *aff'd*, 977 S.W.2d 562 (Tex. 1998). In this case, Sherbin argues that the statements fall under the exception because the workers made the statements without being asked and because the statements were made shortly after the accident. However, the record does not indicate how much time elapsed between the accident and the statements or demonstrate the demeanor of the workers at the time of the statements. *See Volkswagon of Am.*, 159 S.W.3d at 908 n.5 (noting that, in excited utterance analysis, proponent of hearsay has burden to show that testimony falls under exception). Accordingly, exclusion of the statements for failing to meet the standard for excited utterances does not constitute an abuse of discretion.

Sherbin also attempts to incorporate arguments from her trial brief that the statements of the construction workers fall under hearsay exceptions for present-sense impression and then-existing mental, emotional, or physical condition. *See* Tex. R. Evid. 803(1), (3). However, as these

arguments are not presented in her appellate brief, they are not properly before this court on appeal. *See* Tex. R. App. P. 38; *Guerrero v. Tarrant County Mortician Servs. Co.*, 977 S.W.2d 829, 832-33 (Tex. App.—Fort Worth 1998, pet. denied) (holding that permitting incorporation by reference of arguments made in summary judgment motion "would be an open door for parties to circumvent the appellate brief page limits"); *Coggin v. State*, No. 03-04-00585-CR, 2006 Tex. App. LEXIS 4121, at *13 n.3 (Tex. App.—Austin May 12, 2006, no pet.) (mem. op., not designated for publication) (holding that incorporation of arguments "conflict[s] with the rules of appellate procedure") (citing *Guerrero*).

Even if the arguments regarding present-sense impression and then-existing mental, emotional, or physical condition were properly before this Court, the statements of the construction workers do not fall within these exceptions. A present-sense impression is a "statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter." Tex. R. Evid. 803(1). To the extent that the construction workers were describing an event or condition in discussing their attempts to stop production of the dust cloud, there is no indication that the workers' statements were made at the time of the event or immediately thereafter. While counsel stated that the statements occurred after the accident and shortly before the police arrived, he did not specify when the event itself had occurred. *See Daniels v. Yancey*, 175 S.W.3d 889, 895 (Tex. App.—Texarkana 2005, no pet.) ("Without probative evidence in the record which establishes the amount of time between [the] statement and [the event described], we cannot conclude that the statement falls within this exception."). Further, the exception for a then-existing mental, emotional, or physical condition covers statements regarding the declarant's "intent,

12

plan, motive, design, mental feeling, pain, or bodily health." *See* Tex. R. Evid. 803(3). The statements in question refer to the construction workers' alleged prior attempts to stop production of the dust cloud, not to their mental, emotional or physical condition at the time they were making the statements, and consequently do not fall under the exception.

Accordingly, as neither the witness statements of Smith and Garcia nor the statements of the construction workers fall under exceptions to the hearsay rule, we conclude that the trial court did not abuse its discretion in excluding the statements. Sherbin's third issue is overruled.

***Testimony about Construction Worker Statements***

In her fourth and fifth issues, Sherbin argues that the trial court erred in excluding her own testimony and the deposition testimony of Garcia regarding statements of unidentified construction workers that they had attempted to stop the creation of the dust cloud. Neither issue is properly before this Court. To begin with, neither issue is adequately briefed. Sherbin's brief states no legal argument for the proposition that the testimony is admissible except for references to arguments made in her trial brief. As explained above, incorporation of arguments in this manner conflicts with the rules of appellate procedure. *See* Tex. R. App. P. 38.1; *Guerrero*, 977 S.W.2d at 832-33.

Even were we to address Sherbin's arguments, none of them compel admission of the statements in question. The statements of the construction workers are hearsay. As analyzed above, the record does not support the arguments in Sherbin's trial brief that the statements of the unidentified construction workers fall under hearsay exceptions for excited utterance, present-sense

13

impression or then-existing mental, emotional, or physical condition. *See* Tex. R. Evid. 803(1)-(3).

Accordingly, Sherbin's fourth and fifth issues on appeal are overruled.

## CONCLUSION

Finding no reversible error, we affirm the judgment of the trial court.

_____

Diane M. Henson, Justice

Before Justices Patterson, Puryear and Henson

Affirmed

Filed:   July 9, 2010